UNITED STATES of America, Plaintiff-Appellee,

v.

Reginaldo RODRIGUEZ–AREVALO, Leonardo Pineda, Defendants-Appellants.

No. 82–6168.

United States Court of Appeals, Eleventh Circuit.

June 18, 1984.

---

Shamim A. Mirza, Hialeah, Fla., for Rodriguez-Arevalo & Pineda.

Stanley Marcus, U.S. Atty., Miami, Fla., Linnea Johnson, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, TJOFLAT and HENDERSON, Circuit Judges.

ALBERT J. HENDERSON, Circuit Judge:

Reginaldo Rodriguez and Leonardo Pineda appeal their convictions in the United States District Court for the Southern District of Florida of conspiracy to possess with intent to distribute marijuana and cocaine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. The appellants were each sentenced to five years in prison.

The case arose out of a "reverse sting" operation conducted by the Drug Enforce-

ment Administration ("DEA"). DEA Special Agent Juan Perez and a confidential informant, Joseph Cianci, posed as suppliers of narcotics and thereby infiltrated a conspiracy of several individuals, including the appellants, to purchase for subsequent resale large quantities of cocaine and marijuana.

The first conspiratorial meeting occurred on July 23, 1981. Perez and Cianci met initially with Pineda and, shortly thereafter, talked with Rodriguez. Cianci then negotiated for the sale of drugs with Rodriguez alone. When Cianci returned to the company of Perez, he no longer possessed samples of cocaine and marijuana with which he had been entrusted by Perez before the meeting.

As a result of the July 23rd meeting, agents of the DEA rented a warehouse in which they placed a large tractor-trailer containing approximately twenty-two thousand pounds of marijuana. On the following day, Cianci attended another meeting. At the conclusion of this session, the agent and the informant went to a restaurant where they were met by the appellants.

In the parking lot of the restaurant, Rodriguez handed Cianci a slip of paper containing the address of a warehouse which was the proposed place for the delivery of the marijuana. Pineda advised Cianci not to stop the marijuana-laden truck in front of the warehouse, but instead to drive around the block a few times.

Later, rather than deliver the marijuana as planned, Perez and Cianci went to the warehouse and Perez told Pineda that the owner of the marijuana wanted a downpayment. Pineda became upset, stating that if the marijuana sat too long it would deteriorate and that his people were already in place to process the marijuana.

Pineda requested the informant to convince the owner to release at least 5,000 pounds of marijuana before any payment was made. At the conclusion of the discussion, Pineda said that he was going to

contact Rodriguez, who was then in Colombia, and advise him of this latest event in the negotiations.

Still later that day, Perez and Cianci conferred with Pineda and Israel Alvarez Sr. in a parking lot in Miami. Pineda introduced Alvarez as a Cuban associate who dealt in marijuana with Rodriguez. Alvarez stated that he currently had approximately $300,000.00 in cash for a downpayment on marijuana and cocaine, and requested to see a sample bale of the marijuana.

In response to this request, a sample bale was taken from the DEA cache and shown to Alvarez on July 25, 1981. During the inspection of the bale, Pineda picked up the container which had previously held the bale of marijuana and identified the marijuana as having come from Colombia.

After Alvarez inspected the marijuana, Perez proceeded to a neighboring house and met with Israel Alvarez Sr., Israel Alvarez Jr., Manolo Alvarez, Pineda and Cianci. At this meeting, the conspirators discussed arrangements for delivery of the marijuana and cocaine.

On July 27, 1981, the "reverse-sting" operation was terminated with the arrest of Israel Alvarez Sr., Israel Alvarez Jr., Manolo Alvarez, Raphael Alvarez, Jose Antonio Leyva, Theresa Miranda, Julio Rabel, Luis Justiz and Harry Bosquet, and the seizure of $369,000.00.[1]

Rodriguez and Pineda were not arrested until July 15, 1982. When placed under arrest, Rodriguez stated that he was not the only drug source for Israel Alvarez Sr. and that he was only a middleman in the Alvarez organization.

On appeal, the appellants complain that the evidence was not sufficient to support the guilty verdicts, that the district court abused its discretion in denying a motion for mistrial and that the district court erred in admitting the sample bale of marijuana

---

**1.** All of these individuals were tried separately and filed a separate appeal from their convic-   tions.

into evidence. Finding no error, we affirm the convictions.

## I.

■ In determining the sufficiency of the evidence, the facts of the case must be examined in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942), and we must accept all reasonable inferences and credibility choices that tend to support the jury's verdict. *United States v. Gianni,* 678 F.2d 956, 958–59 (11th Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982).

■ To support a conviction for conspiracy, the government must prove (1) that a conspiracy existed, (2) that the defendant had knowledge of the essential objectives of the conspiracy, and (3) that armed with such knowledge, the defendant participated in the conspiracy. *United States v. Blasco,* 702 F.2d 1315, 1330 (11th Cir.), *cert. denied sub nom., Jamardo v. United States,* ── U.S. ──, 104 S.Ct. 276, 78 L.Ed.2d 256 (1983). A person may be found guilty of conspiracy even if he joined the conspiracy after its inception, and even if he played only a minor role. *United States v. Tamargo,* 672 F.2d 887, 889 (11th Cir.), *cert. denied,* 459 U.S. 864, 103 S.Ct. 141, 74 L.Ed.2d 119 (1982). A conspiracy may be inferred from concert of action or from a development and collection of circumstances. *United States v. Malatesta,* 590 F.2d 1379, 1381 (5th Cir.) *(en banc), cert. denied sub nom., Bertolotti v. United States,* 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979); *United States v. Kopituk,* 690 F.2d 1289, 1323 (11th Cir.1982), *cert. denied,* ── U.S. ──, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983); *United States v. Garcia,* 672 F.2d 1349, 1369 (11th Cir.1982).

■ As revealed by our earlier synopsis of the trial testimony, there was ample evidence to support the verdicts of guilt. The appellants each played a significant role in the furtherance of the conspiracy and, in fact, were active participants in the scheme. The evidence supports the jury's

conclusion of the existence of the conspiracy, of the appellants' knowledge of it, and of the appellants' participation in its purpose.

## II.

■ During cross-examination, the government informant, Cianci, asserted his fifth amendment privilege and refused to answer questions about his alleged involvement in certain homicides unrelated to this case. Arevalo and Pineda moved to strike all of Cianci's testimony on the ground that they were denied their sixth amendment right of confrontation. The district court agreed and granted the motion.

Both defendants then moved for a mistrial. The district court denied the motion. The court subsequently instructed the jurors that they should not consider Cianci's testimony and that they should limit their consideration to the testimony of the government agent, Perez, the remaining witnesses called by the government, and the exhibits in evidence.

The appellants maintain that Cianci's testimony was so lengthy and detailed that the court's instruction could not have cured its prejudicial effect. They urge that the district court had no alternative except to declare a mistrial.

Determinations of the impact of allegedly prejudicial testimony upon a jury, as well as what curative measures, if any, can be taken to negate the harmful effects, are matters within the sound discretion of the trial judge. Such assessments must be made on a case by case basis. *See, United States v. Escamilla,* 666 F.2d 126, 128 (5th Cir.1982); *United States v. Pritchard,* 417 F.2d 327, 328 (5th Cir.1969). Prejudicial testimony will not mandate a mistrial when there is other significant evidence of guilt which reduces the likelihood that the otherwise improper testimony had a substantial impact upon the verdict of the jury. *United States v. Rojas,* 537 F.2d 216, 222 (5th Cir.1976), *cert. denied,* 429 U.S. 1061, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977); *see also, United States v. Escamilla,* 666 F.2d at

**616**

129; *United States v. Pritchard*, 417 F.2d at 328.

The government's evidence of the appellants' involvement, particularly the testimony of Agent Perez and the admission of the sample bale of marijuana, was more than adequate to sustain the verdicts of guilty. The strength of that evidence, coupled with the careful instruction to the jury to disregard Cianci's testimony, convinces us that the district court did not abuse its discretion in refusing to grant a mistrial.

### III.

■ The appellants' final contention that the district court erred in admitting the bale of marijuana in the absence of expert testimony of its content ignores well-established case law that such evidence is not essential for conviction. *See United States v. Quesada*, 512 F.2d 1043, 1045 (5th Cir.), *cert. denied*, 423 U.S. 946, 96 S.Ct. 356, 46 L.Ed.2d 277 (1975), *citing United States v. Graham*, 464 F.2d 1073 (5th Cir.), *cert. denied*, 409 U.S. 987, 93 S.Ct. 341, 34 L.Ed.2d 252 (1972). The nature of a substance as marijuana need not be proved by direct evidence where circumstantial evidence establishes beyond a reasonable doubt its identity. *Id.* at 1045; *United States v. Crisp*, 563 F.2d 1242, 1244 (5th Cir.1975). In the instant case, the testimony of Agent Perez relating the origin and handling of the bale was wholly sufficient to establish the identity of the substance as marijuana.

The judgments of conviction are AFFIRMED.