

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-24-2004

# USA v. Henries

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1367

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Henries" (2004). *2004 Decisions.* Paper 687.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/687

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-1367
_____

UNITED STATES OF AMERICA

v.

EDWARD JOHN HENRIES, aka EDDIE MOO

Edward John Henries, *Appellant*

_____

On Appeal From the United States District Court
For the District of New Jersey
(D.C. No. 00-cr-00788-1)
District Judge: Honorable John C. Lifland

_____

Argued May 4, 2004

Before: SLOVITER, FUENTES and BECKER, *Circuit Judges*

(Filed: May 24, 2004)

CHRISTOPHER J. CHRISTIE
United States Attorney
GEORGE S. LEONE
Chief, Appeals Division
Office of United States Attorney
970 Broad Street
Newark, New Jersey 07102-2535
GLENN J. MORAMARCO (Argued)
Assistant United States Attorney
Camden Federal Building & Courthouse
401 Market Street, Fourth Floor
Camden, New Jersey 08101

*Attorneys for Appellee*

BRYAN BLANEY (Argued)
Lowenstein Sandler, PC
65 Livingston Avenue
Roseland, New Jersey 07068

*Attorney for Appellant*

_____

OPINION

_____

BECKER, *Circuit Judge.*

This is an appeal by Edward Henries from an adverse judgment in a criminal case. Henries was convicted of conspiracy to possess and possession of a controlled substance for his involvement in a heroin distribution conspiracy in Newark. After he was arrested, Henries agreed to engage in a proffer session at which he revealed the operation of the conspiracy; the terms of his proffer agreement granted him use immunity for this information. At trial, however, the prosecutor elicited the contents of these self-incriminating statements, and, concomitantly, failed to disclose them in advance to Henries as required by Fed. R. Crim. P. 16(a)(1)(A). On appeal, Henries advances as reversible errors (1) the violation of the proffer agreement; (2) the violation of Rule 16; (3) the District Court's refusal to give a "missing witness" instruction with regard to a government informant who had helped the government infiltrate Henries's drug operation; and (4) the District Court's admission of evidence of drug activity recovered from a location that was not the principal site of the charged conspiracy. The principal

2

issues on appeal are the first two, and we dispose of the others in the margin.[1]  For the

_____

[1]We have explained that a missing witness instruction is not appropriate when a witness is equally available (or equally unavailable) to both parties.  *See, e.g.*, *United States v. Vastola*, 899 F.2d 211, 235 (3d Cir.), *vacated on other grounds*, 497 U.S. 1001 (1990).  The logic is that the negative inference assumed by such an instruction applies equally to both parties, if both could have called the witness.  The District Court made precisely the finding of fact that placed this case within *Vastola*: The government (through both the prosecutor and the testifying FBI agents) claimed that it did not know where Naim—the "missing witness"—was, and the District Court credited this. Henries's counsel represented that he had asked around the (relevant) Somerset locale about Naim's whereabouts, and the replies suggested that Naim was in the area, though he was never actually located.  The District Court concluded that this essentially meant that Henries had equal (or better) access to Naim as did the government.  Although Naim had been paid considerable sums as a confidential government informant, and the government indicated that it would not even cooperate in serving Naim if it could, this does not make the District Court's factual findings clearly erroneous, and we conclude that they were not.

Moreover, even if Henries should have received the requested missing witness instruction, the District Court's failure to give it was harmless for two reasons.  First, Henries still was allowed to suggest the adverse inference to the jury, which he in fact did.  Second, it is rank speculation that Naim would have offered bombshell testimony. Most likely, he would have done no more than close the loop on how Detective Jackson was introduced to Henries's organization.  Thus we reject the missing witness instruction claim.

Henries's argument that the evidence recovered from the Manor Drive location should not have been admitted rests on his assertions that (1) the materials recovered were related to cocaine trafficking, and the conspiracy that he was charged with was a heroin-only distribution conspiracy; while (2) there were several other occupants of the building, and the drugs and paraphernalia were never shown to belong to Henries (e.g., by fingerprints).  Legally, Henries argues that the evidence should have been excluded under Rule 403 as substantially more prejudicial than probative, and under Rule 401 as not relevant evidence because it was not connected to the charged conspiracy.

The Rule 403 argument is meritless, since Henries cannot identify any *unfair* prejudice from the admission of the Manor Drive evidence.  Rather, Henries is really asking us to hold that the District Court abused its discretion under Rule 401 in finding that a reasonable jury could have found that the Manor Drive evidence was somehow connected to the conspiracy.  This is an almost impossible hurdle to overcome; simply the facts (1) that Henries lived at the Manor Drive location, and (2) that the evidence was seized there during the life of the Somerset heroin conspiracy are enough to support the

reasons that follow, we will affirm the judgment of the District Court. Because the

parties are fully familiar with the background facts and procedural history we need not set

them forth, and limit our discussion to our *ratio decidendi.*

The first two issues are best taken up together. We set out the relevant standards

of review in the margin.[2] We will assume, *arguendo*, that both the proffer agreement and

Rule 16 were violated and that the introduction during the government's direct

---

District Court's admission of the testimony. Henries focuses on the things that the government did *not* show, but that misses the point; the government showed Henries's presence at Manor Drive and a temporal coincidence, which is enough. Thus we reject this evidentiary argument as well.

[2]The government contends that Henries failed to preserve his objection on the proffer agreement issue and that our review therefore is only for plain error. We disagree. Henries's objections were timely enough to put the District Court on notice of the objectionable evidence.

Since the breach of the proffer agreement is essentially a question of contract interpretation, our review is plenary. *See United States v. Liranzo*, 944 F.2d 73, 77 (2d Cir. 1991) ("Pre-trial agreements, such as cooperation agreements and proffer agreements, are interpreted according to principles of contract law. . . . Because the interpretation of a contract is generally a question of law, our review of the district court's determination that the government did not breach the Proffer Agreement is *de novo*." (citations omitted)).

With respect to the question whether the government met its obligation under Fed. R. Crim. P. 16 to disclose oral statements by Henries in its possession that it intended to use at trial, because this is essentially a discovery matter, we review the District Court's ruling and response under an abuse-of-discretion standard. *See United States v. Scott*, 223 F.3d 208, 211 (3d Cir. 2000).

The applicable harmless error standard is that an error is harmless only if "'it is highly probable that the error did not contribute to the judgment.'" *United States v. Davis*, 183 F.3d 231, 255 (3d Cir. 1999) (quoting *Murray v. United of Omaha Life Ins. Co.*, 145 F.3d 143, 156 (3d Cir. 1998)).

examination of evidence that had been obtained from the proffer session was improper.[3]

However, we find any such error harmless. This is because: (1) the proffer-derived evidence against Henries was in part cumulative of other properly admitted evidence; and (2) the (other) evidence against Henries was overwhelming.

Under the terms of the proffer agreement, Agent Thompson should not have testified that Henries (1) "reveal[ed] the inner workings of his narcotics distribution organization," (2) identified Paulino as Henries's heroin supplier, and (3) described the methods Henries used to purchase (and the quantities purchased) from Paulino. But Henries had directly confessed to aspects of his heroin-dealing activity to law enforcement officers following the raid on the Manor Drive residence, and so the challenged evidenced was in part cumulative.

Turning to the strength of the government's other evidence, it may be summarized as follows. First, a search of the Manor Drive stash house that Henries used for his drug dealing activity, during which Henries was present, revealed cocaine and marijuana. During the questioning that followed, Henries told an Essex County detective not only

---

[3]The government does not deny that the proffer agreement was violated. It argues, however, that the District Court's decision to strike the offending testimony cured the error because: (1) there is no "overwhelming probability" that the jury could not follow the instruction to strike; and (2) Henries's admissions from the proffer session were admissible under the theory of "curative admissibility" and the principle of completeness. For the reasons noted in the text, we need not rely exclusively on the first argument, nor even reach the second. We note, however, in strong terms, our displeasure with the failure of the government to live up to its proffer agreement. The Court expects the government to be scrupulous in fulfilling its undertakings.

that some of the narcotics seized in the apartment did not belong to him, but also that he had drug suppliers in Newark and New York City from whom he could obtain forty to fifty bricks of heroin at a time, as well as kilogram quantities of cocaine. Additionally, Henries admitted to frequenting the 81 Somerset Street location in Newark, which was the center of the heroin distribution activity, where numerous "buys" were made.

Second, while Henries did not specifically identify Danny Paulino (the New York-based drug distributor who was Henries's main supplier and who was the animating figure behind the proffer offer) in his admissions to the Essex County investigator, other evidence in the case would suggest that Paulino was the supplier. At the time of this admission, Henries had in his possession a card bearing both the name "Danny" and Paulino's telephone number. When Paulino was arrested, he had a address book in his possession which listed "Eddie" (Henries) and his phone numbers. Moreover, Paulino testified that he was Henries's supplier, and he pled guilty to conspiring with Henries. And there were at least seventy telephone calls between Henries and Paulino during the course of the charged conspiracy.

Third, the government presented video and audio tapes of Henries's participation in a June 27, 2000 drug deal, along with undercover agent Jackson's testimony about this event. Her testimony was to the effect that on June 27, 2000, when she came to 81 Somerset Street to purchase eight bricks of heroin, Sean Crawford (an aide of Henries) replied that he did not have a sufficient quantity. Only after Henries's vehicle (followed

6

by the FBI) left Somerset Street, proceeded to a stash house, and returned to 81 Somerset Street was Agent Jackson able to purchase the drugs.

Fourth, the government had a similar set of evidence about a drug deal on September 14, 2000. On that occasion, Agent Jackson asked Crawford if she could purchase twenty bricks of heroin, and Crawford said on tape that he needed a couple of minutes because he only had fourteen bricks. The videotape then shows Crawford walking over to Henries and speaking with him. Law enforcement officers then followed Henries as he drove to a stash house and returned to 81 Somerset Street, at which time Agent Jackson was able to purchase the full amount of drugs.

Fifth, evidence was adduced about the search of Henries's Manor Drive apartment that occurred in March of 2000 (which was in between Jackson's first and second drug purchases at 81 Somerset Street), during which law enforcement officers found Bolivian rock incense, a coffer grinder, a small digital scale, 720 glass vials used for packaging cocaine, several loose bundles of cash, and a safe with over $25,000 in cash.

Sixth, the jury also heard testimony from (cooperators) Crawford and Paulino about their drug-dealing relationships with Henries. Crawford's testimony was corroborated by the videotapes and audiotapes played at trial, while Paulino's was corroborated by the audiotapes of his conversations with Henries during the period in which Henries was cooperating with the government.

Finally, the Court instructed the jury to disregard the proffer-based evidence.

Under our jurisprudence, a jury is presumed to follow the court's instruction to disregard inadmissible evidence "unless there is an overwhelming possibility that the jury will be unable to follow the court's instructions . . . and a strong likelihood that the effect of the evidence would be devastating to the defendant." *United States v. Thomas*, 315 F.3d 190, 203 (3d Cir. 2002) (quoting *Greer v. Miller*, 483 U.S. 756, 766 n.8) (alteration in original); *see also United States v. McGlory*, 968 F.2d 309, 344 (3d Cir. 1992) ("Prejudicial testimony will not mandate a mistrial when there is other significant evidence of guilt which reduces the likelihood that the otherwise improper testimony had a substantial impact upon the verdict of the jury." (quoting *United States v. Rodriguez-Arevalo*, 734 F.2d 612, 615 (11th Cir. 1984))). In light of this principle, even if the District Court's curative instruction alone did not cure the error in admitting Agent Thompson's testimony about Henries's proffer, it did markedly diminish the harm worked by the improper evidence.

In sum, the audiotapes and videotapes, combined with perfectly dovetailing narrations by Jackson and Crawford, implicate Henries in the conspiracy, even if they never directly capture him doing something illegal. Henries's recorded conversations with Paulino (during Henries's cooperation with the government) make it clear that the two had a preexisting course of business—and indeed, as we note above, each had the other's phone number in his phone directory. Circumstantially, it seems clear that Henries is the head of the conspiracy. At all events, Paulino's, Crawford's, and Jackson's

8

testimony was so thoroughly consistent that we cannot possibly conclude that Henries's confession made the critical difference in the jury's verdict.

The judgment of the District Court will be affirmed.[4]

---

[4]We do, however, commend Court-appointed counsel, Mr. Blaney, upon his zealous advocacy.