[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 27, 2007
THOMAS K. KAHN
CLERK

No. 06-11507
Non-Argument Calendar

_____

D. C. Docket No. 05-20161-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIE ARTHUR WALLS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 27, 2007)**

Before ANDERSON, BLACK and MARCUS, Circuit Judges.

PER CURIAM:

Willie Arthur Walls was convicted of two counts of bank robbery in

violation of 18 U.S.C. § 2113(a).  On appeal, Walls challenges his convictions on

the basis of an allegedly unconstitutional witness identification and alleged prosecutorial misconduct.

Walls first claims that witness Gina Alvarez' identification of him violated his constitutional right to due process. Alvarez was a teller at a SouthTrust Bank the day it was robbed.[1] The robber gave her a note asking for money and threatening to shoot and kill her if she did not comply. Alvarez gave him the money, and was able to see his face for between thirty seconds and one minute.

After the robber left the bank, Alvarez notified the bank manager that a robbery had occurred. The manager immediately had her write a description of the robber before she talked to any other employees. Alvarez described the robber as a black male between twenty and thirty years old. She wrote that he was between five feet, seven inches and six feet in height. She also wrote that he had a scar near his eye, a broad nose, and a narrow chin.

While Alvarez was composing the description, a bystander handed a Florida ID card to a bank employee, who passed it on to the bank manager. The bank manager showed Alvarez the ID card after she had finished writing her

---

[1] The facts about the identification are drawn from the magistrate judge's report and recommendation, adopted by the district court. Walls did not object to the report in the district court. As a result, we review the findings of fact contained therein for plain error. See United States v. Hall, 716 F.2d 826, 828-29 (11th Cir. 1983). To the extent Walls is claiming those facts are erroneous, his argument is without merit. The findings of fact are amply supported by the record, and there is no plain error.

description, and asked whether she recognized the person depicted on the card. Alvarez said it was the bank robber. Later, an FBI agent asked Alvarez whether the man on the ID card was the man who robbed the bank, without showing her the card again, or any other photos. Alvarez again said yes. The person on the ID card was Walls.

At trial, Alvarez identified Walls as the bank robber. The jury also heard testimony about Alvarez' out-of-court identification of Walls on the day of the robbery. Walls argues that Alvarez' identification was unconstitutionally unreliable because it was tainted by seeing him depicted on the ID card.

Walls filed a motion in limine seeking to exclude the identification. But because he objected to neither the in-court nor the out-of-court identification at trial, we review for plain error. See Fed. R. Crim. P. 52(b); United States v. Rutkowski, 814 F.2d 594, 598 (11th Cir. 1987) (motion in limine does not preserve error for appellate review). Because we conclude that it was not error to admit Alvarez' in-court or out-of-court identification, Walls also has not shown plain error.

We follow a two-step analysis for determining whether introduction of an identification violates due process. "First, we must determine whether the original identification procedure was unduly suggestive." Cikora v. Dugger, 840 F.2d 893,

895 (11th Cir. 1988).  Next, even if we conclude that the identification procedure was suggestive, "we must then consider whether, under the totality of the circumstances, the identification was nonetheless reliable."  Id.

Walls argues that showing the single photo on the ID card to Alvarez was impermissibly suggestive.  We need not address that question, because it is clear that the identification was sufficiently reliable.  For an identification to be unconstitutionally unreliable, there must be "a substantial risk of misidentification."  Johnson v. Dugger, 817 F.2d 726, 729 (11th Cir. 1987).  "Factors considered in determining reliability include 'the opportunity to view the witness at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.' "  Id. (citing Neil v. Biggers, 409 U.S. 188, 93 S. Ct. 375 (1972)).

All of the reliability factors indicate that Alvarez' identification had a well-founded independent source, and was not suggested by Walls's photo on the Florida ID.  In the first place, Alvarez had an extended opportunity to view the robber's face at close distance while he passed her the note, stood at the counter, and accepted the money she gave him.  Then, during that encounter, her degree of

4

attention was very high, both because she was the direct object of the robber's threat and because, as a bank employee, she had been trained to remember the physical features of bank robbers.  Third, Alvarez' prior written description of the robber was completely consistent with Walls's actual appearance, as depicted by the ID card.  Fourth, Alvarez' identification of Walls as the culprit was at all times unequivocal.  Finally, Alvarez viewed the ID card very shortly after the robbery occurred.  It is unlikely that the photo on the ID card drowned out her memory of the actual incident, when that incident was so fresh in her mind.  Cf. Neil, 409 U.S. at 201, 93 S. Ct. at 383 (upholding a one-on-one identification that occurred seven months after the crime).

It is also highly significant that the police had no role in Alvarez' identification of the person on the ID card as the bank robber.  We have on a previous occasion doubted whether an identification conducted entirely by private individuals is even subject to due process constraints.  See United States v. Venere, 416 F.2d 144, 148 (5th Cir. 1969).[2]  Here, the police played no role in generating the photo that was shown to Alvarez.  The card was given to the bank manager, who received it shortly after the bank had been robbed and presented it

---

[2] Decisions by the former Fifth Circuit issued before the close of business on September 30, 1981 are binding precedent in this Court.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

to Alvarez after she had given a written description of the suspect. We have previously upheld identifications where the police apprehend a suspect and present him, one-on-one, to a witness for identification. See, e.g., Johnson, 817 F.2d at 729. We have no trouble concluding that a similar procedure conducted by private individuals satisfied constitutional standards of reliability. See Venere, 416 F.2d at 148 ("If it be true that even the police may. . . contemporaneously confront the victim with the suspect at the scene of the crime, how much more true is it that the victim may do so himself before deciding that he has the right man to turn over to the police.") The district court properly concluded that Walls's arguments about the accuracy of the identification went to the weight of the testimony, not its admissibility. See Manson v. Brathwaite, 432 U.S. 98, 116, 97 S. Ct. 2243, 2254 (1977) (without "a very substantial likelihood of irreparable misidentification. . . such evidence is for the jury to weigh").

Walls next argues that prosecutorial misconduct entitles him to a new trial. "Prosecutorial misconduct requires a new trial only if we find the remarks (1) were improper and (2) prejudiced the defendant's substantive rights." United States v. Delgado, 56 F.3d 1357, 1368 (11th Cir. 1995). The misconduct must have been "so pronounced and persistent as to permeate the entire atmosphere of the trial." United States v. Chirinos, 112 F.3d 1089, 1098 (11th Cir. 1997) (punctuation and

citations omitted). Moreover, "[p]rejudicial testimony will not mandate a mistrial when there is other significant evidence of guilt which reduces the likelihood that the otherwise improper testimony had a substantial impact upon the verdict of the jury." United States v. Rodriguez-Arevalo, 734 F.2d 612, 615 (11th Cir. 1984).

The alleged misconduct in this case consisted of two incidents. In the first, while prosecutors were conducting a direct examination of a police officer, the officer volunteered that he knew about an item of evidence because he had "seen this case come to state court." The comment implied that Walls had been tried in state court. The court refused to grant a mistrial, and considered but refused to give a curative instruction. In the second incident, when prosecutors were conducting a direct examination of an FBI agent who gave a photo lineup to another witness, the agent mentioned that they had used "one of Willie Walls' previous arrest photographs." This improperly notified the jury that Walls had a prior arrest. Walls again moved for a mistrial. The court refused to grant it, but admonished prosecutors that a further incident might warrant a mistrial. The court noted that the prejudicial effect was minimal, because the jury likely would have inferred on its own that the photo was from a prior arrest.

These stray comments do not warrant a new trial because they cannot have affected the outcome. "[I]n determining whether there is a reasonable probability

that prosecutorial misconduct changed the result of the trial, relevant criteria include (1) the degree to which the challenged remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether they are isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the competent proof to establish the guilt of the accused." Davis v. Zant, 36 F.3d 1538, 1549 (11th Cir. 1994). While both comments were improper, they were accidental because the prosecutors neither uttered them nor elicited them. Furthermore, they were isolated. When read in the context of over two days of live testimony, they are barely noticeable. The comments did not come close to "permeat[ing] the entire atmosphere of the trial." Chirinos, 112 F.3d at 1098.

Nor could the comments have had much prejudicial effect. The reference to a "state case" was so brief and cryptic that it is unlikely the jury even noticed it. The second comment, while it did imply that Walls had a previous arrest, was also mentioned only in passing; indicated nothing about the context or reason for the prior arrest; and was not argued to the jury in opening or closing arguments.

Most important, there was "significant evidence of guilt which reduces the likelihood that the otherwise improper testimony had a substantial impact upon the verdict of the jury." Rodriguez-Arevalo, 734 F.2d at 615. Alvarez and the teller at the Bank of America branch independently identified Walls as the robber. Walls's

8

ID was found at the SouthTrust Bank and presented to a bank employee shortly after the robbery. Alvarez then identified Walls as the robber. The SouthTrust robbery was linked to the robbery at the Bank of America branch: the teller at the other robbery gave a similar description of the robber, and the robber there also used a note written in red ink, which demanded money and indicated that he had a gun. The detective who apprehended Walls testified that Walls, after receiving <u>Miranda</u> warnings, confessed to both robberies and admitted dropping his ID card at the SouthTrust Bank. His car (a light-colored Lincoln) matched the car the bank manager spotted leaving the SouthTrust robbery.

Considered alongside this substantial competent evidence of guilt, the fact that Walls had a previous arrest or a "state case" is unlikely to have been noticed or to have played any role in the deliberations, much less affected the outcome of the trial. Any possible error resulting from the improper comments was therefore harmless. In addition, the district court was well within its discretion in not granting a mistrial or issuing a curative instruction, given the insignificance of the errors. <u>See</u> <u>United States v. Trujillo</u>, 146 F.3d 838, 845 (11th Cir. 1998) (decision not to grant mistrial reviewed for abuse of discretion). Accordingly, Walls's convictions are

**AFFIRMED.**

9