UNITED STATES of America,
Plaintiff–Appellee,

v.

Lonnie C. BAGGETT, Jr.,
Defendant–Appellant.

No. 91–7124.

United States Court of Appeals,
Eleventh Circuit.

Feb. 27, 1992.

W. Gregory Hughes, Mobile, Ala., for defendant-appellant.

J.B. Sessions, U.S. Atty. and Richard H. Loftin, Mobile, Ala., for plaintiff-appellee.

Before HATCHETT and BIRCH, Circuit Judges, and MORGAN, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this criminal appeal, we affirm the conviction for conspiracy to possess with intent to distribute illicit drugs, but vacate the sentence and remand the case for re-sentencing.

## I. FACTS

In Evergreen, Alabama, Deputy James Lambert of the Conecuh County Sheriff's Department Narcotics Squad and Sergeant Ed Odom of the Alabama Department of Public Safety Drug Enforcement Administration Task Force in Mobile invited Tom Pemberton, an employee at the Evergreen

Inn, to become a confidential informant. The police officers discussed with Pemberton the names of individuals they suspected of being involved in the drug business, mentioning Lonnie Baggett a/k/a "Boots." Pemberton, who was Baggett's first cousin, told Deputy Lambert that in 1987, while he was at Baggett's home, Baggett showed him forty pounds of marijuana that Baggett had for sale. After further discussions, Pemberton agreed to work as a confidential informant in regards to Baggett.

Working in his undercover capacity, Pemberton proceeded to make numerous undercover buys of both marijuana and cocaine. Pemberton made his first undercover buy from Baggett on February 25, 1988. Baggett and Pemberton met at the Evergreen Inn on that date, and Baggett told Pemberton that he was in the business of selling drugs full time, and that Pemberton should come to him if he was interested in obtaining any drugs. Baggett added that if Pemberton wanted any cocaine, he would have to "do a line" first, and he would have to check him for a wire.* Baggett, however, never required Pemberton to "do a line." At this first meeting on February 25, 1988, Pemberton observed that Baggett had a large roll of money and asked Baggett if he was afraid of carrying that much money. In response to the question, Baggett pulled a two-shot Derringer from his pocket, pointed it at Pemberton, and stated that he would kill anyone who tried "to rip [him] off or set [him] up."

Pemberton met with Officers Lambert and Odom later that afternoon, and they provided him with $400 of "buy money" and searched his person and vehicle. Later, at approximately 7:30 p.m., Pemberton went to Baggett's home and attempted to buy marijuana, but Baggett refused payment and gave Pemberton 4.6 grams of marijuana. After refusing payment for the marijuana, Baggett began discussing with Pemberton the possibility of Pemberton buying cocaine from him at a later time. Pemberton met with police officers after leaving Baggett's home and turned

over the marijuana Baggett provided. Officer Odom took the evidence to the Alabama Department of Forensic Sciences in Mobile, and released it to Deborah Sennett, a forensic scientist. After conducting a chemical analysis of the substance, Ms. Sennett determined that it was marijuana.

On March 22, 1988, Pemberton again received marijuana from Baggett. Agent William Womack of the Alabama Department of Public Safety Narcotics Unit and Deputy Lambert met with Pemberton at approximately 8 a.m. on March 22. They conducted a search of Pemberton and his vehicle and provided him with $300 in "buy money." Upon arriving at Baggett's home, Pemberton had a discussion with Baggett concerning the arrangements they had agreed to earlier. Following this discussion, Baggett and Pemberton went outside to Pemberton's truck, and Baggett took a bag containing 83.9 grams of marijuana from his truck and placed it in Pemberton's truck after Pemberton had given him the money. Lambert and Womack, who had positioned themselves across the street from Baggett's home, were able to see Baggett get something from his truck and place it in Pemberton's truck. After leaving Baggett's home, Pemberton met and turned over the substance to Lambert and Womack. The Alabama Department of Forensic Sciences determined that this substance was also marijuana.

In order to make another undercover drug buy from Baggett, Pemberton again met with Officers Lambert and Odom on May 5, 1988. At this meeting, Pemberton informed the officers of a conversation with Baggett the prior week at which time Baggett told Pemberton that Mark McIntyre, who was his partner, needed a drug shipment delivered from Miami. Baggett wanted Pemberton to make the trip for them. Pemberton met Baggett at the Evergreen Inn at approximately 9:10 p.m. and followed him to his home where Pemberton purchased .58 grams of cocaine for $100. This evidence was also turned over to Lam-

---

* To "do a line" refers to separating the cocaine into thin lines of white powder and inhaling one of the lines through the nose.

bert and Odom. Gary Wallace, supervisor of the drug unit at the Alabama Department of Forensic Sciences in Mobile, determined that the substance was cocaine.

At approximately 4 a.m. on May 7, 1988, Pemberton again met with Baggett at the Evergreen Inn. Baggett asked Pemberton whether he had ever seen a "big rock," and produced a block of cocaine from his pants pocket approximately two inches thick, six inches long, and four inches wide. Baggett cut off a piece of the cocaine block and sold it to an individual in the lobby of the inn for $2,000. Pemberton purchased 1.08 grams of cocaine from Baggett later that morning. This substance was also turned over to Lambert and Odom, and Wallace determined that this substance was cocaine.

## II. PROCEDURAL HISTORY

A federal grand jury for the Southern District of Alabama indicted Baggett and Robert Pugh, in a fifteen-count indictment. The grand jury named Baggett in Counts I through XI. Nine of the counts were based on Pemberton's drug buys and charged Baggett with possession of drugs with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Count II charged that on February 25, 1988, Baggett used or carried a two-shot Derringer in relation to a drug trafficking crime, in violation of 18 U.S.C. § 925(c)(1). Finally, Count XI charged Baggett with conspiracy to possess with intent to distribute less than 50 kilograms of marijuana and less than 500 grams of cocaine, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2.

On May 16, 1989, after trial had commenced and the government had given its opening statements, Baggett entered into a plea agreement whereby he promised to cooperate with the authorities and enter a guilty plea to Count VII of the indictment. Count VII charged that on May 7, 1988, Baggett possessed with intent to distribute 1.08 grams of cocaine. Under the terms of the plea agreement, the government would move to dismiss the remaining counts and ask for a downward departure to eighteen months based on Baggett's substantial assistance. At the plea hearing, the remaining counts were dismissed. Subsequent to the plea hearing, the district court declined to accept the plea agreement. Based on its finding that Baggett had not provided substantial assistance, the district court, after rejecting the plea agreement, allowed Baggett to withdraw his plea and set the case for trial.

Baggett moved to dismiss the case on the basis of double jeopardy, and the district court denied the motion. Baggett appealed, and this court affirmed the district court's ruling. 901 F.2d 1546. The government, however, failed to obtain a superseding indictment reinstating the charges that had been dismissed at the guilty plea hearing. Thus, trial was had only on Count VII, and the district court allowed only evidence of one gift of marijuana, one sale of marijuana, and one sale of cocaine from Baggett to Pemberton under Federal Rule of Evidence 404(b) to show intent and plan. At trial, Gary Wallace, the supervisor of the drug unit at the Alabama Department of Forensic Sciences in Mobile, was unavailable, and the government introduced his chemical analysis report into evidence in lieu of his testimony to establish that the substance seized was cocaine.

The jury found Baggett guilty of possession with intent to distribute cocaine, and the district court sentenced Baggett to a term of imprisonment for a period of 135 months without parole.

## III. ISSUES

On appeal, Baggett raises the following six issues: (1) whether the district court erred in admitting hearsay as proof that the substance was cocaine; (2) whether the district court erred in denying the motions to dismiss and to suppress the informant's testimony; (3) whether the district court erred by imposing a two-level increase under the Sentencing Guidelines for possession of a firearm during collateral conduct, but not during the offense of conviction; (4) whether the district court erred in imposing a four-level enhancement based upon Baggett's role in collateral conduct,

but not in the offense of conviction; (5) whether the district court erred in including forty pounds of marijuana in establishing base level; and (6) whether the district court erred in refusing to give Baggett a two-level reduction for acceptance of responsibility.

## IV. CONTENTIONS

In response to Baggett's contentions, the government contends that the introduction of the chemical analysis of the substance was not essential to the conviction. The government also contends that because the circumstantial evidence proved beyond a reasonable doubt that the substance was cocaine, the forensic scientist's report had sufficient indicia of reliability to be admissible as an exception to the hearsay rule under Federal Rule of Evidence 803(24). The government also contends that absent any evidence of bad faith or misconduct on the part of the government, its failure to provide the lost or inadvertently destroyed tapes was not a violation of the Jencks Act.

## V. DISCUSSION

■ Baggett challenges his conviction on the ground that the district court erred by allowing a chemical analysis report into evidence to establish that the substance was cocaine. This court has held:

> The law is quite clear that the introduction of a chemical analysis of the substance is not essential to conviction.... The narcotic nature of the substance need not be proved by direct evidence if the circumstantial evidence presented established ... that beyond a reasonable doubt the substance was [cocaine]. [Citations omitted.]

*United States v. Zielie*, 734 F.2d 1447, 1456 (11th Cir.1984) *cert. denied*, 469 U.S. 1189, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985); *see United States v. Leavitt*, 878 F.2d 1329, 1336 (11th Cir.), *cert. denied*, 493 U.S. 968, 110 S.Ct. 415, 107 L.Ed.2d 380 (1989); *United States v. Harrell*, 737 F.2d 971, 978 (11th Cir.1984), *cert. denied*, 469 U.S. 1164, 105 S.Ct. 923, 83 L.Ed.2d 935 (1985); *United States v. Crisp*, 563 F.2d 1242, 1244 (5th Cir.1977); *United States v. Quesada*, 512 F.2d 1043, 1045 (5th Cir.), *cert. denied*, 423 U.S. 946, 96 S.Ct. 356, 46 L.Ed.2d 277 (1975). The law of this circuit takes the expansive view that the identification of a controlled substance can be established by such circumstantial evidence as "lay experience based on familiarity through prior use, trading, or law enforcement; a high sales price; on-the-scene remarks by a conspirator identifying the substance as a drug; and behavior characteristic of sales and use, such as testing, weighing, cutting and peculiar ingestion." *Harrell*, 737 F.2d at 978. Additionally, this court has recognized that "the uncorroborated testimony of a person who observed a defendant in possession of a controlled substance is sufficient if the person is familiar with the substance at issue." *Zielie*, 734 F.2d at 1456; *see United States v. Rodriguez–Arevalo*, 734 F.2d 612, 616 (11th Cir.1984); *United States v. Sanchez*, 722 F.2d 1501, 1506 (11th Cir.), *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984). Thus, if the circumstantial evidence in this case established beyond a reasonable doubt that the substance was cocaine, introduction of the chemical analysis report, even if improper, constituted harmless error. *Compare Zielie*, 734 F.2d at 1456 (holding that circumstantial evidence can prove beyond a reasonable doubt that a substance in question is a drug) *with United States v. Gomez*, 529 F.2d 412, 417 (5th Cir.1976) (holding that after viewing evidence as a whole, a claimed error must have had a substantial impact on a jury verdict in order to mandate reversal of a conviction).

In this case, the circumstantial evidence established beyond a reasonable doubt that the substance was cocaine. The confidential informant testified that Baggett said he was in the business of selling cocaine, carried large rolled-up sums of money, and carried a firearm—a common tool of the drug trade. *See United States v. Alvarez*, 755 F.2d 830, 849 (11th Cir.), *cert. denied*, 474 U.S. 905, 106 S.Ct. 274, 88 L.Ed.2d 235 (1985). Additionally, Baggett sold the substance at a high price, charging as much as $100 for .58 grams. The circumstantial evidence also included the testimony of a

former cocaine addict who testified that during the relevant time period he purchased cocaine from Baggett.

Agent Odom, a law enforcement officer with 24 years of experience and who had been working in the drug division for 17 years, also testified that based on his extensive training in the sight identification of drugs, his encounters with cocaine on over 300 separate occasions, and his observations of these events, the substance was cocaine. Deputy Lambert, who had also undergone training for the sight identification of drugs, testified that as an undercover agent he had bought and seen cocaine on numerous occasions. Based on this experience, Deputy Lambert testified that the substance was cocaine.

We hold that a reasonable jury could have concluded that the circumstantial evidence in this case established that the substance was cocaine beyond a reasonable doubt. Thus, even if the report was inadmissible, its admission constituted harmless error. *Compare Zielie,* 734 F.2d at 1456 (holding that circumstantial evidence can prove beyond a reasonable doubt that a substance in question is a drug) *with Gomez,* 529 F.2d at 417 (holding that after viewing evidence as a whole, a claimed error must have had a substantial impact on a jury verdict in order to mandate reversal of a conviction). Accordingly, because of the strength of the circumstantial evidence in this case, we find that the admission of the report had no substantial impact on the guilty verdict. *See United States v. Oates,* 560 F.2d 45 (2d Cir.1977) (holding that a chemical analysis report was inadmissible hearsay due to the proscription of rule 803(8)); *but see United States v. Quezada,* 754 F.2d 1190 (5th Cir.1985) (holding that a warrant of deportation was admissible because the proscription of rule 803(8) does not apply to mechanical, routine, objective observations of factual matter).

■ Baggett also challenges his sentence on the ground that the district court erred in imposing a four-level enhancement based upon section 3B1.1 of the federal Sentencing Guidelines. Section 3B1.1(a) provides: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." U.S. Sentencing Commission Guidelines Manual (1991). This section requires the district court to determine the role the defendant played in the criminal activity and how many participants were involved in the criminal activity. The Guideline's application notes define "participant" as a person who is criminally responsible for the commission of the offense, but who need not have been convicted. *See* U.S.S.G. § 3B1.1, comment (n. 1).

In this case, the confidential informant testified that Baggett indicated that he was a partner with Mark McIntyre and that he, Baggett, wanted to talk with the confidential informant about making a trip to Miami in order to receive drugs for the partnership. This conversation between Baggett and the confidential informant clearly indicates that Baggett played a managerial or supervisory role in the criminal enterprise. Nevertheless, as the government had to concede at oral argument in this case, the evidence is insufficient to support the four-level increase under section 3B1.1(a), because no evidence exists in the record to prove that Baggett was involved with five or more participants. Thus, we vacate the sentence and remand the case for resentencing. We have reviewed all other claimed errors and find each of them to be without merit.

## VI.  CONCLUSION

Accordingly, the conviction is affirmed, and we vacate the sentence and remand the case for resentencing.

**AFFIRMED** and **REMANDED.**