[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14664
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cr-20630-ASG-8

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSEPH BRADLEY MAZARD,
a.k.a. B,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 13, 2012)

Before CARNES, HULL and WILSON, Circuit Judges.

PER CURIAM:

After a jury trial, Joseph Bradley Mazard appeals his convictions and

sentences for: (1) conspiring to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 851; (2) possession with intent to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (3) possession with intent to distribute a detectable amount of cocaine and marijuana, in violation of 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2; (4) possession of a firearm in furtherance of a drug-trafficking crime, in violation of 21 U.S.C. § 924(c)(1)(A)(i) and 18 U.S.C. § 2; and (5) being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

On appeal, Mazard argues that: (1) the district court erred in denying his motion to sever; (2) the district court abused its discretion by admitting two photographs and the testimony of a police officer identifying substances as marijuana; (3) the trial evidence was insufficient to support his firearm conviction; and (4) the mandatory-minimum sentencing scheme in 21 U.S.C. § 841 is unconstitutional under the Due Process Clause and the Eighth Amendment. After review, we affirm.

The district court did not abuse its discretion when it denied Mazard's motion to sever as untimely. The defendant waives any severance request that is "not raised by the deadline the court sets under Rule 12(c)," but the district court may grant relief from the waiver for good cause. Fed. R. Crim. P. 12(e). Here, the

2

district court ordered all defendants to file any motions to sever within five days of filing of the superseding indictment, which occurred on March 19, 2010.  Mazard did not file his motion to sever until July 12, 2010.  Further, Mazard conceded that his change in counsel did not constitute good cause, and he made no further argument as to good cause.  See United States v. Smith, 918 F.2d 1501, 1509 (11th Cir. 1990) (finding no abuse of discretion where defendant did not attempt to establish good cause for the untimeliness of the motion to sever).[1]

The district court also did not abuse its discretion by admitting the challenged photographs.  The first photograph was taken by officers during a search of a residence Mazard shared with codefendant Nicole Donaldson, in which drugs, firearms, currency and drug-trafficking paraphernalia were found.  The photograph shows a spare bedroom filled with personal belongings and furniture. Laying on a desk, along with many other items, is a small picture of four individuals—one of whom is apparently Mazard—making a hand gesture.  Mazard argued that the photograph was unfairly prejudicial because it implied Mazard was

---

[1]We also agree with the district court's alternative ruling denying Mazard's motion on the merits because he did not show that he would be prejudiced by a joint trial.  Mazard did not establish that he and his codefendants would rely upon "irreconcilable or mutually exclusive" defenses.  See United States v. Cassano, 132 F.3d 646, 652 (11th Cir. 1998) (internal quotation marks omitted).  Instead, Mazard essentially argued only that he had a better chance of acquittal in a separate trial, which is insufficient to require severance.  See United States v. Blankenship, 382 F.3d 1110, 1125 (11th Cir. 2004).

a gang member.

The photograph was relevant to show the spare bedroom at the time of the search and several pieces of evidence found inside it, including a cocaine press and a checkbook for Nicole Donaldson d/b/a/ Da Hood Barbershop.  In fact, Da Hood Barbershop was the business Mazard and Donaldson used as a front for their drug organization.  In addition, the picture of Mazard found inside the spare bedroom, along with male clothing found in a closet, tied Mazard to codefendant Donaldson's residence.

As to any prejudicial effect, the picture of Mazard is a very small part of the larger photograph of the spare room.  Indeed, the picture is so small that it is difficult to distinguish the four individuals' faces, much less their hand gestures. Further, when the district court admitted the photograph of the spare room, it limited the officer's testimony to whether he recognized Mazard as one of the individuals in the smaller picture and did not allow the government to elicit any details about the picture.  Although Mazard argues a "W" hand gesture is affiliated with the Westside Gang, no such evidence was presented to the jury.  Under the circumstances, we cannot say that the probative value of the photograph of the spare bedroom is substantially outweighed by any risk that the jury might convict Mazard because it believed he was a gang member.  See Fed. R. Evid. 403; Old

4

Chief v. United States, 519 U.S. 172, 180, 117 S. Ct. 644, 650 (1997) ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."); United States v. Spoerke, 568 F.3d 1236, 1251 (11th Cir. 2009) (explaining that relevant evidence is inherently prejudicial and is only excluded "when unfair prejudice substantially outweighs probative value").

The second photograph shows a parking lot and an empty store front where Da Hood Barbershop formerly had been located. Two doors away can be seen Angels, a strip club. The sign above the strip club's door states "Angels - FULL NUDITY - FULL LIQUOR ALL NEW ANGELS" and has a picture of a woman in profile. Below the sign stands an unknown man dressed in a suit and a red shirt and shoes.

This photograph was relevant to show Da Hood Barbershop's location in the Angels Plaza shopping center. To demonstrate that the barbershop was a front and not Mazard's primary source of income, the government presented testimony that Mazard spent a great deal of time either in the shopping center's parking lot or in Angels, instead of in his barbershop. The parking lot was also the site of several drug transactions.

5

Furthermore, it is doubtful the photograph caused any unfair prejudice.  The jury heard testimony about Mazard's frequent visits to the nearby strip club.  Moreover, the district court instructed the jury to consider the photograph only for "the physical location of this area of the plaza," and to disregard the individual in the photograph.  See Spoerke, 568 F.3d at 1251 (stating that a limiting instruction may be sufficient to cure any unfair prejudice caused by the evidence's admission).  In sum, the district court did not abuse its discretion in admitting either photograph.

Without citing any case law or rules of evidence, Mazard argues that the district court improperly admitted Miami-Dade Police Officer Tomas Tundidor's testimony that some substances he found during the search of Mazard and Donaldson's home were "suspect" marijuana or marijuana residue.[2]  Mazard contends that Tundidor's testimony was not credible because the officer admitted to "tainting the arrest scene by moving evidence" during the search and because it was not supported by any laboratory testing.

As an initial matter, Mazard invited any alleged error with respect to

---

[2]At trial, the parties stipulated that the government had found 201.7 grams of cocaine and 33.2 grams of marijuana, amounts that were confirmed by laboratory testing.  However, the stipulation did not apply to the two bags of alleged marijuana and residue on two scales found at the residence, which was the subject of the officer's testimony.

6

Tundidor's drug identification testimony. After Mazard initially objected to the officer's testimony, the district court asked the parties to prepare argument on the issue. The next morning, the government argued that Tundidor's testimony was admissible circumstantial evidence of the identity of a controlled substance and cited several decisions from this Court. See, e.g., United States v. Clavis, 956 F.2d 1079, 1088 (11th Cir. 1992); United States v. Baggett, 954 F.2d 674, 677 (11th Cir. 1992). In response, Mazard's counsel stated that she was not arguing that the evidence was inadmissible and asked for a limiting instruction, which the district court gave to the jury. See United States v. Brannan, 562 F.3d 1300, 1306 (11th Cir. 2009) (explaining that this Court is precluded from reviewing an error induced or invited by a party); United States v. Jernigan, 341 F.3d 1273, 1290 (11th Cir. 2003) (finding any error in admitting hearsay statements was invited because defendant agreed to the admission of the evidence).

In any event, Mazard's credibility argument goes to the weight of Tundidor's testimony, not to its admissibility. Relevant evidence is admissible unless it is prohibited by the Federal Rules of Evidence or some other federal law. Fed. R. Evid. 402. Given that Mazard does not contend that Tundidor's testimony was irrelevant or that it was excludable under any other evidentiary rule, we have no basis for concluding that the district court abused its discretion in admitting it.

7

Next, we conclude the government presented ample evidence to support Mazard's 18 U.S.C. § 924(c) conviction.  To convict a defendant of possessing a firearm in furtherance of a drug-trafficking crime, the government must show that the firearm "helped, furthered, promoted or advanced the drug trafficking." United States v. Timmons, 283 F.3d 1246, 1252 (11th Cir. 2002).  In other words, that there must be a "nexus" between the firearm and the drug operation.  Id. at 1253; see also United States v. Suarez, 313 F.3d 12871292-93 (11th Cir. 2002).

Here, officers found two firearms in the master bedroom of the residence Mazard shared with codefendant Donaldson—a loaded .9 millimeter gun under the bed and another unloaded gun in a dresser drawer.[3]  On top of the dresser were a cup containing a large stack of dollar bills, and two canisters containing small plastic bags of cocaine and marijuana.  In another dresser drawer was almost $6,000 in U.S. currency.  Loose bullets were scattered on top of the dresser and around the room.  A backpack containing small plastic bags and a larger bag of marijuana was on the floor next to dresser.  In the closet was a coffee grinder with marijuana residue and a ledger of suspected drug transactions.  In a second closet

---

[3]Although on appeal Mazard claims he did not reside at Donaldson's home, there was ample evidence for a jury to find that he did.  Mazard's cousin, Luc St. Hilaire, testified that Donaldson was Mazard's girlfriend and that Mazard lived at the home with Donaldson.  Further, officers arrested Mazard at the home, where he was found sleeping in his pajamas, and male clothing was found in both closets of the home.

outside the master bedroom, officers found a bulletproof vest, a can of bullets, a can of cocaine, an envelope of cocaine, a box of baking soda, a large bag containing 150 small plastic bags, including some filled with cocaine, a coffee cup with cocaine residue and a spoon.  In the kitchen cabinet above the stove, officers found two scales with marijuana and cocaine residue, a bag of cocaine, a bag of marijuana, empty plastic bags and a bowl with marijuana residue.

Given that the firearms were in Mazard's home and were accessible, loaded and in close proximity to the drugs, drug trafficking paraphernalia and drug profits, the evidence was more than sufficient to support the jury's finding that Mazard possessed the firearms and that there was a nexus between the firearms and his drug trafficking operation.

Finally, Mazard's other arguments—that 21 U.S.C. § 841(b)'s enhanced mandatory-minimum sentences based on prior drug convictions violates the Due Process Clause and the Eighth Amendment—are foreclosed by our precedent.  See United States v. Willis, 956 F.2d 248, 250-51 (11th Cir. 1992) (rejecting Eight Amendment claim); United States v. Holmes, 838 F.2d 1175, 1177 (11th Cir. 1988) (rejecting due process claim).

For all these reasons, we affirm Mazard's convictions and sentences.

**AFFIRMED.**

9