On Application for Rehearing

PER CURIAM.
The opinion issued on June 29, 2012, is hereby withdrawn, and the following opinion is substituted therefor.
The appellant, Emmett Grady Wallace, was convicted of the chemical endangerment of a child, a violation of § 26-15-3.2(A), AIa.Code 1975, and the unlawful manufacture of a controlled substance, i.e., methamphetamine, a violation of § 13A-12-218, Ala.Code 1975. He was sentenced to 10 years’ imprisonment on each conviction, the sentences to be served concurrently. This appeal followed.
I.
Wallace first argues that the State failed to present sufficient evidence to convict him of manufacturing methamphetamine because, he says, it failed to prove that the substance was in fact methamphetamine or that he possessed any precursor chemical as that term is defined in § 20-2-181, Ala.Code 1975. Specifically, he argues that the evidence was insufficient because the State failed to present the testimony of a forensic or scientific expert that the substance was methamphetamine or that he possessed a precursor chemical.
At the close of the State’s case, Wallace moved for a judgment of acquittal and argued: “In order to establish that you made meth, you have to have a scientific determination that meth was present at that place or on these substances. That requires the Department of Forensic Sciences to do some test or some other scientific agency to determine [the] presence of meth.” (R. 292.) The circuit court denied the motion. (R. 299.)
Section 13A-12-218, Ala.Code 1975, provides, in relevant part:
“(a) A person commits the crime of unlawful manufacture of a controlled substance in the first degree if he or she violates Section 13A-12-217 and two or more of the following conditions occurred in conjunction with that violation:
[[Image here]]
“(4) A clandestine laboratory operation was to take place or did take place within 500 feet of a residence, place of business, church, or school.
[[Image here]]
*215 “(6) A clandestine laboratory operation was for the production of controlled substances listed in Schedule I or Schedule II.
“(7) A person under the age of 17 was present during the manufacturing process.”
Section 13A-12-217, Ala.Code 1975, provides, in pertinent part:
“(a) A person commits the crime of unlawful manufacture of a controlled substance in the second degree if, except as otherwise authorized in state or federal law, he or she does any of the following:
“(1) Manufactures a controlled substance enumerated in Schedule I to V, inclusive.
“(2) Possesses precursor substances as determined in Section 20-2-181, in any amount with the intent to unlawfully manufacture a controlled substance.”
Section 20 — 2—181 (d), Ala.Code 1975, addresses precursor chemicals and states:
“Until the Board of Pharmacy adopts a rule designating listed precursor chemicals, as required by subsection (a), the following chemicals or substances are hereby deemed listed precursor chemicals:
“(1) Acetic anhydride;
“(2) Anthranilic acid and its salts;
“(3) Benzyl cyanide;
“(4) Ephedrine, its salts, optical isomers, and salts of optical isomers;
“(5) Ergonovine and its salts;
“(6) Ergotamine and its salts;
“(7) Hydriodic acid;
“(8) Isosafrol;
“(9) Methylamine;
“(10) N-Acetylanthranilic acid and its salts;
“(11) Norpseudoephedrine, its salts, optical isomers, and salts of optical isomers;
“(12) Phenylacetic acid and its salts;
“(13) Phenylpropanolamine, its salts, optical isomers, and salts of optical isomers;
“(14) Piperidine and its salts;
“(15) Pseudoephedrine, its salts, optical isomers, and salts of optical isomers;
“(16) Safrole; and
“(17) 3,4-Methylenedioxyphenyl-2-propanone.”
The indictment charged Wallace as follows:
“Emmett Grady Wallace ... whose name is otherwise unknown to the Grand Jury, did knowingly manufacture a controlled substance in Schedules I to V, to-wit: METHAMPHETAMINE, and/or possess precursor substances, in any amount, with the intent to unlawfully manufacture a controlled substance, as determined in Section 20-2-181 of the Code of Alabama 1975, and in conjunction therewith, did also establish a clandestine laboratory operation which was to take place or did take place within 500 feet of a residence, place of business, church, or school, to-wit: a residence; and/or established a clandestine laboratory operation for the production of controlled substances, to-wit: METHAMPHETAMINE; and/or a person under the age of 17, [E.T.] was present during the manufacturing process, in violation of section 13A-12-218 of the Code of Alabama, against the peace and dignity of the State of Alabama.”
When reviewing whether the State has presented sufficient evidence to support a conviction, we keep in mind the following:
“[T]he evidence must be reviewed in the light most favorable to the prosecution. *216 Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state’s evidence establishes a prima facie case. Gunn v. State, 387 So.2d 280 (Ala.Cr.App.), cert. denied, 387 So.2d 283 (Ala.1980). The trial court’s denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App.1983); Thomas v. State. When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for a judgment of acquittal by the trial court does not constitute error. Young v. State, 283 Ala. 676, 220 So.2d 843 (1969); Willis v. State. A verdict of conviction will not be set aside on the ground of insufficiency of the evidence unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust. Duncan v. State, 436 So.2d 883 (Ala.Cr.App.1983), cert. denied, 464 U.S. 1047, 104 S.Ct. 720, 79 L.Ed.2d 182 (1984); Johnson v. State, 378 So.2d 1164 (Ala.Cr.App.), cert. quashed, 378 So.2d 1173 (Ala.1979).”
Breckenridge v. State, 628 So.2d 1012, 1018-19 (Ala.Crim.App.1993).
“ ‘Circumstantial evidence is not inferior evidence, and it will be given the same weight as direct evidence, if it, along with the other evidence, is susceptible of a reasonable inference pointing unequivocally to the defendant’s guilt. Ward v. State, 557 So.2d 848 (Ala.Cr.App.1990). In reviewing a conviction based in whole or in part on circumstantial evidence, the test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979).’ ”
Lockhart v. State, 715 So.2d 895, 899 (Ala.Crim.App.1997), quoting Ward v. State, 610 So.2d 1190, 1191-92 (Ala.Crim.App.1992).
The State’s evidence tended to show that on June 30, 2010, Officer Christopher Owenby of the Eclectic Police Department was investigating a theft when he learned that property from the theft had been pawned at a pawnshop in Montgomery. Officer Owenby obtained the assistance of Sgt. C.J. Coughlin and Sgt. J.L. Walker, detectives with the Montgomery Police Department, to investigate the name and address on the pawn ticket. The pawn ticket had been signed by M.T. and listed a Plum Street address in Montgomery.[1]
Officer Owenby testified that when the officers arrived at the Plum Street address, he went to the back of the house and approached an open window. Wallace was standing at the open window and Offi *217 cer Owenby asked him to answer the door. The house was occupied by Wallace, M.T., and M.T.’s six-year old daughter, E.T. M.T. told police that the stolen property was no longer in the house, and she gave oral and written consent for the officers to search the residence.
Sgt. Coughlin testified that he found a box in a closet in a bedroom that M.T. said was occupied by her and Wallace. The box, he said, had smoke emanating from it. Inside the box was a duffel bag, and inside the duffel bag was a plastic drink bottle with fluid and metal strips in it. The substance, he said, was bubbling, and he believed that it was hazardous. At that time, Sgt. Coughlin testified, he followed protocol, cleared the house, and called the narcotics division. Sgt. Coughlin further testified that there was a thick white smoke throughout the house that had a chemical smell and that the child, E.T., was walking around the house.
Detective W.T. Grant of the Montgomery Police Department testified that Wallace made a statement to him in regard to what had happened at Plum Street. Wallace told him that he had lived at that residence for five years; Detective Grant said that Wallace first referred to M.T. as his wife and that Wallace later called M.T. his girlfriend. Wallace told Detective Grant that he, M.T., and E.T., lived in the house.
Detective Benjamin Schlemmer, a narcotics officer with the Montgomery Police Department, testified that he was called to the house on Plum Street because officers on site suspected that they had discovered a portable meth lab. Detective Schlem-mer testified to the extent of his training in identifying “both the finished product of methamphetamines once it had actually been manufactured and then also how to identify the manufacturing process of methamphetamine.” (R. 232.) He had over 150 hours of training that -focused on the manufacture of narcotics, specifically methamphetamine. He said that coffee filters, tubing, a funnel, butane, a mason jar with a clear liquid at the bottom of it, salt, and rags at the residence were all materials necessary for a one-pot meth lab. Detective Schlemmer testified:
“Prosecutor: And say in the instance of cocaine, would you actually collect that evidence?
“[Detective Schlemmer]: Yes, ma’am. I would collect it myself.
“Prosecutor: What would you do with that evidence once you collected it?
“[Detective Schlemmer]: I would submit it to the Department of Forensic Sciences for analysis.
“Prosecutor: Okay. In the instance of a meth lab, do you collect evidence in the same way you would with, say, cocaine?
“[Detective Schlemmer]: No, ma’am,-we do not.
“Prosecutor: Why not?
“[Detective Schlemmer]: When you show up on the scene of a meth lab, like I said, you have many volatile chemicals. You have camping fuel which is flammable. A lot of times you’ll have lithium strips, battery strips, which create sparks and heat which can cause the camp fuel to ignite. You can also have multiple other explosive devices that are generally kept under pressure. So once those have been combined, there’s no way to send it over to the lab without endangering the people that would be testing it.”
(R. 238-39.) Detective Schlemmer said that he observed a white smoke coming from the container, that the smoke had an acidic ammonia smell, and that, in his experience, which he had detailed, the box discovered in the closet was a “one-pot methamphetamine lab.” (R. 245.) Detec *218 tive Schlemmer further testified that at a certain stage in the manufacture of methamphetamine, the plastic bottle will contain three layers of liquid: a bottom and top layer of byproduct and a middle layer of methamphetamine oil. He further explained that what should be a clear liquid in the plastic bottle is often tinted blue or red depending on the component containing the ephedrine or pseudoephedrine. He said that either ephedrine or pseu-doephedrine is a necessary ingredient in making methamphetamine and that neither may be purchased but must be extracted from various cold or allergy pills such as Sudafed. These pills are assigned specific colors — Sudafed is red. During the chemical processing inside the plastic bottle, Detective Schlemmer said, the color attached to the agent used separates and releases the coloring “thus causing the tinting in the liquid.” (R. 270.) Following this stage in the manufacture, filters would be used to extract the methamphetamine oil and then the butane and hoses would be used to apply pressure to the oil, which results in the formation of crystal methamphetamine. Here, the substance at the top of the liquid was red, indicating that pseu-doephedrine had been used in the process.
Detective Schlemmer contacted the Drug Enforcement Administration, who, in turn, summoned a company — One-Stop Environmental — to dispose of the lab and its contents. He watched an employee of One-Stop test the finished product and then place it in a container for transporting hazardous material, Detective Schlem-mer said.
E.T. testified at Wallace’s trial and a videotape of her interview by law-enforcement officers also was admitted and played to the jury. At trial, E.T. testified that she was then in the first grade, that she lived with her mother and her stepfather, Wallace, and that her mother and Wallace married after Wallace was arrested. On the videotape E.T. said that on three occasions she had seen Wallace put “medicine” into the plastic bottle and that she had seen Wallace “fire[] it up and then he smoked it.” She also said that she told Wallace that police would find the “stuff’ in the closet.
Alabama has never required direct proof that a substance is a controlled substance to sustain a drug conviction. As this Court stated in J.M.A. v. State, 74 So.3d 487 (Ala.Crim.App.2011):
“This Court has upheld convictions for possession of a controlled substance despite a lack of scientific testing where a witness who confiscated or took possession of the substance testified to having sufficient knowledge or expertise to identify the substance. See Hanks v. State, 562 So.2d 536, 540 (Ala.Crim.App.1989), rev’d on other grounds, 562 So.2d 540 (Ala.1989) (upholding admission of police officer’s opinion testimony that substance was marijuana, despite lack of scientific testing, where ‘the record con-tainted] ample evidence of the testifying police officer’s experience and training in the area of drug enforcement and drug detection and identification’); Headley v. State, 720 So.2d 996, 998 (Ala.Crim.App.1998) (‘The evidence does not have to consist of scientific testing, so long as the proper foundation for the arresting officer’s own experience in identifying marijuana is laid.’); Powell v. State, 804 So.2d 1167, 1170 (Ala.Crim.App.2001) (affirming conviction where ‘the witness who identified the substance as marijuana[ ] had experience in recognizing marijuana[ ] and was familiar with its odor and appearance’).”
74 So.3d at 493-94.
Overwhelmingly, the vast majority of jurisdictions that have considered this issue *219 agree that chemical tests are not necessary to obtain a drug-related conviction.
“ ‘The law is quite clear that the introduction of a chemical analysis of the substance is not essential to conviction. ... The narcotic nature of the substance need not be proved by direct evidence if the circumstantial evidence presented established ... that beyond a reasonable doubt the substance was [cocaine]. [Citations omitted.]’ •
“United States v. Zielie, 734 F.2d 1447, 1456 (11th Cir.1984), cert. denied, 469 U.S. 1189, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985); see United States v. Leavitt, 878 F.2d 1329, 1336 (11th Cir.), cert. denied, 493 U.S. 968, 110 S.Ct. 415, 107 L.Ed.2d 380 (1989); United States v. Harrell, 737 F.2d 971, 978 (11th Cir.1984), cert. denied, 469 U.S. 1164, 105 S.Ct. 923, 83 L.Ed.2d 935 (1985); United States v. Crisp, 563 F.2d 1242, 1244 (5th Cir.1977); United States v. Quesada, 512 F.2d 1043, 1045 (5th Cir.), cert. denied, 423 U.S. 946, 96 S.Ct. 356, 46 L.Ed.2d 277 (1975). The law of this circuit takes the expansive view that the identification of a controlled substance can be established by such circumstantial evidence as ‘lay experience based on familiarity through prior use, trading, or law enforcement; a high sales price; on-the-scene remarks by a conspirator identifying the substance as a drug; and behavior characteristic of sales and use, such as testing, weighing, cutting and peculiar ingestion.’ Harrell, 737 F.2d at 978. Additionally, this court has recognized that ‘the uncorroborated testimony of a person who observed a defendant in possession of a controlled substance is sufficient if the person is familiar with the substance at issue.’ Zielie, 734 F.2d at 1456; see United States v. Rodriguez-Arevalo, 734 F.2d 612, 616 (11th Cir.1984); United States v. Sanchez, 722 F.2d 1501, 1506 (11th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984).”
United States v. Baggett, 954 F.2d 674, 677 (11th Cir.1992).
“Illegal drugs will often be unavailable for scientific analysis because their nature is to be consumed. As a practical matter, therefore, the evidentiary' rule urged by [the appellant] would insulate from prosecution a large class of unlawful acts involving illicit drugs when the government happens upon the scene too late to seize a sample of the substance. To our knowledge, no court has held that scientific identification of a substance is an absolute prerequisite to conviction for a drug-related offense, and we too are unwilling to announce such a rule. In view of the limitations that such a burden would place on prosecutors, and in accordance with general evi-dentiary principles, courts have held that the government may establish the identity of a drug through cumulative circumstantial evidence. See, e.g., United States v. Osgood, 794 F.2d 1087, 1095 (5th Cir.), cert. denied, 479 U.S. 994, 107 S.Ct. 596, 93 L.Ed.2d 596 (1986); [United States v.] Harrell, 737 F.2d [971] 978-79 [ (11th Cir.1984) ]. So long as the government produces sufficient evidence, direct or circumstantial, from which the jury is able to identify the substance beyond a reasonable doubt, the lack of scientific evidence is not objectionable. Cf. Osgood, 794 F.2d at 1095; Harrell, 737 F.2d at 978.”
United States v. Schrock, 855 F.2d 327, 334 (6th Cir.1988). See also United States v. Walters, 904 F.2d 765, 770 (1st Cir.1990) (“Proof based on scientific analysis or expert testimony is not required to prove the illicit nature of a substance, and identification of a substance as a drug may be based on the opinion of a knowledgeable lay per *220 son.”); United States v. Scott, 725 F.2d 43, 45 (4th Cir.1984) (“[L]ay testimony and circumstantial evidence may be sufficient, without the introduction of an expert chemical analysis, to establish the identity of the substance involved in an alleged narcotics transaction.”); State v. Hernandez, 85 Wash.App. 672, 676, 935 P.2d 623, 625 (1997) (“Circumstantial evidence and lay testimony may be sufficient -to establish the identity of a drug in a criminal case.”); United States v. Murray, 753 F.2d 612, 615 (7th Cir.1985) (“The identity of a drug may be established by circumstantial evidence.”); Sterling v. State, 791 S.W.2d 274, 277 (Tex.App.1990) (“An expert may identify a controlled substance without chemical analysis.”); United States v. Agueci, 310 F.2d 817, 828 (2d Cir.1962) (“Just as with any other component of the crime, the existence of and dealing with narcotics may be proved by circumstantial evidence; there need be no sample placed before the jury, nor need there be testimony by qualified chemists as long as the evidence furnished found for inferring that the material in question was narcotics.”).
The United States Court of Appeals for the Fourth Circuit stated the following concerning the types of circumstantial evidence that will support a drug conviction where no scientific evidence as to the identity of the drug has been introduced:
“Such circumstantial proof may include evidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in the same manner as the illicit drug, testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence.... ”
United States v. Dolan, 544 F.2d 1219, 1221 (4th Cir.1976).
Here, Detective Schlemmer testified that the plastic bottle and its components were consistent with the materials needed to build a meth lab and that the chemical smell emanating from the bottle was consistent with the presence of methamphetamine. The liquid on the top in the bottle was the color of one of the ingredients used in the process, Detective Schlemmer said, and the substance in this case was red, indicating the presence ’ of pseu-doephedrine.[2] E.T.' said on videotape that *221 she had seen Wallace put “medicine” in the bottle and that she had seen him “fire[ ] it up and then he smoked it.” The State’s evidence established beyond a reasonable doubt that Wallace was guilty of the unlawful manufacture of a controlled substance.
II.
Wallace next argues that the State failed to prove that he violated § 26-15-3.2, Ala.Code 1975, because, he says, it failed to prove that he was a “responsible person” as that term is defined in § 26-15-2, Ala.Code 1975.
Section 26-15-3.2(a), Ala.Code 1975, defines the crime of chemical endangerment:
“(a) A responsible person commits the crime of chemical endangerment of exposing a child to an environment in which he or she does any of the following:
“(1) Knowingly, recklessly, or intentionally causes or permits a child to be exposed to, to ingest or inhale, or to have contact with a controlled substance, chemical substance, or drug paraphernalia as defined in Section 13A-12-260.”
A “responsible person” is defined in § 26-15-2(4), Ala.Code 1975, as follows:
“A child’s natural parent, stepparent, adoptive parent, legal guardian, custodian, or any other person who has the permanent or temporary care or custody or responsibility for the supervision of a child.”
Here, E.T. testified that Wallace was her stepfather. (R. 218.) She said that her mother and Wallace married after Wallace was arrested. Wallace told law enforcement that he had lived at the Plum Street residence for five years. M.T. told police that the bedroom where the drugs were found was occupied by her and Wallace.
The jury could have inferred that E.T. was under the supervision of her mother and Wallace. The State presented sufficient evidence that Wallace was a “responsible person” as that term is defined in § 26-15-2, Ala. Code 1975.
III.
Last, Wallace argues that the circuit court committed reversible error by refusing to give an instruction on the statutory definition of precursor chemicals that are contained in § 20-2-181, Ala.Code 1975.
At trial, Wallace requested that the court read § 20-2-181(d), Ala. Code 1975, the list of the 17 enumerated precursor chemicals recognized in that statute, to the jury. The circuit court indicated that no pattern jury instruction existed for the offense, that the list of precursor chemicals was not exclusive, and that the list was confusing. The circuit court declined to read the list of the precursor chemicals to the jury. (R. 320.)
“ ‘It has long been the law in Alabama that a [circuit] court has broad discretion in formulating jury instructions, provided those instructions are accurate reflections of the law and facts of the case.’ Culpepper v. State, 827 So.2d 883, 885 (Ala.Crim.App.2001) (citing Knotts v. State, 686 So.2d 431, 456 (Ala.Crim.App.1995)).”
*222 Barrett v. State, 33 So.3d 1287, 1288 (Ala.Crim.App.2009).
“The trial judge may refuse to give a requested jury charge when the charge is either fairly and substantially covered by the trial judge’s oral charge or is confusing, misleading, ungrammatical, not predicated on a consideration of the evidence, argumentative, abstract, or a misstatement of the law.”
Harris v. State, 794 So.2d 1214, 1220 (Ala.Crim.App.2000).
As stated in Part I, to be convicted of violating § 13A-12-218, Ala.Code 1975, the State must prove that the appellant is guilty of violating § 13A-12-217, Ala.Code 1975. This section provides:
“(a) A person commits the crime of unlawful manufacture of a controlled substance in the second degree if ... he does any of the following:
“(1) Manufactures a controlled substance enumerated in Schedules I to V, inclusive.
“(2) Possesses precursor substances as determined in Section 20-2-181, in any amount with the intent to unlawfully manufacture a controlled substance.”
(Emphasis added.)
Here, the indictment charged alternative means of committing the offense of the unlawful manufacture of a controlled substance in the second degree:
“Emmett Grady Wallace ... whose name is otherwise unknown to the Grand Jury, did knowingly manufacture a controlled substance in Schedules I to V, to-wit: METHAMPHETAMINE, and/or possess precursor substances, in any amount, with the intent to unlawfully manufacture a controlled substance .... ”
(Emphasis added.)
The circuit court instructed the jury on the manufacture of methamphetamine, and the jury returned a verdict finding Wallace guilty of the unlawful manufacture of a controlled substance. “We have recognized that an error in instructions pertaining to a particular charge is rendered harmless where the jury returns a verdict of guilty to a different or alternative charge.” State v. Bowman, 588 A.2d 728, 732 (Me.1991). See Deutcsh v. State, 610 So.2d 1212, 1221 (Ala.Crim.App.1992). Thus, any error in the circuit court’s failure to list all the precursor chemicals necessary to constitute a violation of § 13A-12-217(a)(2), Ala.Code 1975, an alternative method of committing the crime of the unlawful manufacture of a controlled substance in the second degree, was harmless beyond a reasonable doubt.
For the foregoing reasons, we affirm Wallace’s convictions for the chemical endangerment of a child and the unlawful manufacture of a controlled substance.
APPLICATION FOR REHEARING GRANTED; OPINION OF JUNE 29, 2012, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
WINDOM, P.J., and KELLUM, BURKE, and JOINER, JJ., concur.
WELCH, J., concurs in part and dissents in part, with opinion.

. To protect the anonymity of the child victim in this case, we are using initials for the child’s mother and child. See Rule 52, Ala.R.App. P.

. The dissenting opinion asserts:
"[T]he State presented no evidence to prove that the substance in the seized plastic bottle was, in fact, methamphetamine or that completed methamphetamine had been produced by Wallace. Rather, Det. Schlemmer explained part of the manufacturing process, testified that the layered liquid in the plastic bottle indicated that an intermediate step in the process had not been completed and that two additional steps were required' — -filtration to extract methamphetamine oil and application of gas to the oil to crystalize it, but that ‘it hadn't made it to that process yet.’ ”
130 So.3d at 224 (emphasis added). As the emphasized language indicates, Detective Schlemmer's testimony was sufficient for the jury to conclude that the one-bottle meth lab in this case contained methamphetamine.
Detective Schlemmer specifically testified that the middle layer of liquid in a one-bottle meth lab, like the one in Wallace’s case, is methamphetamine oil. For purposes of proving that Wallace possessed methamphetamine in violation of § 13A-12-217, this testimony was sufficient. Wallace does not argue that the State was required to prove that he possessed methamphetamine; rather, he argues that the State was required to use scientific or forensic analysis to prove that he possessed methamphetamine. See Wallace’s brief, p. 15 ("The core of Mr. Wallace’s argument is that the State cannot prove [its] case without scien- *221 tifie evidence indicating that a chemical compound listed in Schedule I through V was manufactured by Mr. Wallace .... Mr. Wallace’s contention is that in order to convict the State would be required to present expert scientific testimony at the trial of his case.” (emphasis added)). For the reasons discussed, Wallace's position is inconsistent with Alabama law.