[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14545
Non-Argument Calendar
_____

D.C. Docket No. 1:02-cr-00380-CC-JSA-3

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LEWIS CLAY,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 3, 2018)

Before WILSON, JORDAN and JILL PRYOR, Circuit Judges.

PER CURIAM:

Lewis Clay appeals the district court's revocation of his supervised release. On appeal, Clay argues that the district court erred by considering hearsay during his revocation hearing. He also argues that the government failed to prove by a preponderance of the evidence that Clay had violated the terms of his supervised release. After careful review, we affirm.

## I.    BACKGROUND

Clay completed a term of incarceration in July 2016 and began a 10 year term of supervised release. As a condition of Clay's supervised release, he was required to refrain from committing another federal, state, or local crime. After Clay was arrested for being in possession of cocaine with the intent to distribute, the probation office filed a petition to revoke Clay's supervised release.

The following evidence was adduced during Clay's revocation hearing. Jerrold Wilkerson, a detective with the Clayton Country Drug Task Force, testified that he received information from a confidential informant ("CI") who had purchased cocaine. Wilkerson arranged a controlled buy between the CI and the seller. The CI called the seller in Wilkerson's presence and arranged to meet at a gas station to complete the sale. At the agreed-upon time, Wilkerson saw a black BMW with license plate number RFV0437 approach the gas station parking lot. A man, whom Wilkerson identified during the revocation hearing as Clay, was driving the BMW. Although Clay stayed in the car, Wilkerson had an

2

unobstructed view of a hand-to-hand transaction between the CI and Clay. After the transaction, the CI gave Wilkerson a clear plastic bag containing a white powder. The powder field tested positive for cocaine. Wilkerson ran the phone number that the CI had called and the plate number for the BMW. Both came back as associated with Clay.

Wilkerson arranged a second controlled buy between the CI and Clay. Wilkerson did not personally observe this transaction. Instead, he relied on information from other officers, who told him that Clay arrived in the same BMW. None of the officers, however, observed a hand-to-hand transaction.

Finally, Wilkerson arranged a third controlled buy. The CI made contact with Clay using the same phone number he had called during the previous buys; Clay arrived in the same black BMW. Wilkerson observed the transaction, at no point losing sight of Clay or the CI. The CI again turned over the substance he purchased from Clay, which appeared to Wilkerson to be consistent with cocaine.

After he was apprehended and had waived his *Miranda* rights, Clay made a statement to Wilkerson. Clay stated that he was a "small fish" who could help Wilkerson catch "bigger fish." Doc. 299 at 26.[1] He explained that he could get Wilkerson an "ounce" later in the day, but he wanted written assurance that his assistance might help his case. *Id.*

---

[1] Citations to "Doc #" refer to the numbered district court docket entries.

During the revocation hearing, Clay's probation officer testified that as a condition of Clay's supervised release, Clay had provided him with monthly supervision reports. In those reports, Clay had listed a cell phone number that matched the phone number the CI called to set up the controlled buys. Clay also had reported owning a black BMW with the license plate number RFV0437.

Based on this evidence, the district court found that Clay had violated the terms of his supervised release by committing the offense of possession of cocaine with intent to distribute on the dates of the first and third controlled buys. After hearing argument from Clay and the government, the district court sentenced Clay to 21 months' imprisonment and three years of supervised release. This is Clay's appeal.

## II.    STANDARDS OF REVIEW

A district court may revoke a defendant's supervised release and sentence the defendant to serve all or part of the supervised release term in prison if the court finds by a preponderance of the evidence that the defendant violated a condition of supervised release. 18 U.S.C. § 3583(e)(3). We review the district court's revocation decision for an abuse of discretion, *United States v. Cunningham*, 607 F.3d 1264, 1266 (11th Cir. 2010), but we review questions of law *de novo*, *United States v. Frazier*, 26 F.3d 110, 112 (11th Cir. 1994).

4

Additionally, we are bound by the district court's findings of fact unless they are clearly erroneous. *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993).

## III.    ANALYSIS

Clay raises two arguments on appeal:  (1) the district court erred by considering hearsay during the revocation hearing, and (2) the district court erred in finding that Clay had violated his supervised release because the evidence was insufficient to prove that Clay had committed the offense of possession of cocaine with intent to distribute.  We address each argument in turn.

### A.    The District Court Committed No Reversible Error By Admitting and Considering Hearsay.

Clay argues that the district court erred by considering hearsay statements without conducting the proper balancing test and without finding that the statements were reliable.  Specifically, Clay objects to two sources of alleged hearsay:  testimony about what the CI told Wilkerson and testimony about what the other officers told Wilkerson.[2]

Although the Federal Rules of Evidence do not apply to revocation proceedings, the defendant nevertheless must be afforded "certain minimal due

---

[2] The government argues that Clay failed to preserve his hearsay objections because he objected to this testimony as violating his rights under the Confrontation Clause of the Sixth Amendment, which does not apply to supervised release revocation hearings.  With respect to Wilkerson's testimony about the CI, however, the district court appears to have treated Clay's objection as a hearsay objection.  The court responded that it would consider the testimony only to explain Wilkerson's conduct.  We need not decide whether Clay properly preserved a hearsay objection to Wilkerson's testimony about the other officers because we conclude there was no reversible error under any standard of review.

process requirements" during a revocation hearing. *Frazier*, 26 F.3d at 114. In deciding whether to admit hearsay testimony in a supervised release revocation hearing the district court therefore "must balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation" and also must find that the hearsay statement is "reliable." *Id.* Failure to apply this two part test constitutes a due process violation, but we will not reverse if the error was harmless. *Id.*

As for the testimony regarding what the CI told Wilkerson, its admission was not erroneous because it was not hearsay. Hearsay is a statement other than one the declarant makes while testifying that is offered to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Here, the district court did not consider Wilkerson's testimony regarding what the CI said for the truth of the matter asserted; rather, the testimony's purpose was to explain Wilkerson's actions in setting up the controlled buys. Accordingly, because no hearsay statement was admitted, there was no need for the district court to apply the *Frazier* balancing test or to determine whether the hearsay was reliable.

As for the testimony regarding what the other officers told Wilkerson, even assuming those statements amounted to impermissible hearsay, any error was harmless. As we explain below, the non-hearsay evidence "overwhelmingly demonstrated that [Clay] breached the terms of his supervised release." *Id.* Clay

6

thus has failed to show that the district court committed reversible error by considering hearsay testimony without conducting a balancing test or finding that the statements were reliable.

**B.      The District Court Did Not Clearly Err By Finding that Clay Committed the Offense of Possession of Cocaine With Intent to Distribute.**

Clay next argues that the district court erred in finding that he had violated the terms of his supervised release because the government failed to prove that he committed the offense of possession of cocaine with intent to distribute.  Clay asserts that the evidence was insufficient for the district court to have found that (1) Clay was the person who sold the white powdery substance to the CI and (2) the substance was cocaine.  For the following reasons, we conclude that the district court's findings were not clearly erroneous.

First, Clay argues that there was insufficient evidence to prove that he was the person selling the substance to the CI.  Clay acknowledges that Wilkerson identified him in court, but argues that the identification was unreliable because Wilkerson only saw the seller for a short period of time and never saw him leave the car.  Clay further argues that the phone number and the BMW, both of which were connected to him, were insufficient to establish that he was the person selling the substance.  We disagree.  The government presented the following evidence to prove that Clay was the person selling the substance to the CI:  (1) Wilkerson

7

personally observed Clay selling the substance to the CI on two occasions and positively identified Clay in court; (2) the phone number the CI used to reach the drug supplier was the same number that Clay gave to his probation officer; and (3) the car used by the drug supplier was a black BMW, the same type of car that Clay told his probation officer that he owned, with the same license plate number that Clay had reported to his probation officer. This evidence was sufficient to prove by a preponderance of the evidence that Clay was the person selling the substance to the CI during the first and third controlled buys.

Second, Clay argues that the evidence was insufficient to prove that the substance he sold to the CI was cocaine. He notes that the substance was not subjected to a laboratory test and that the government failed to prove what type of field test was used. The government can establish that a substance was cocaine based solely on circumstantial evidence, including "the uncorroborated testimony of a person who observed a defendant in possession of a controlled substance . . . if the person is familiar with the substance at issue." *United States v. Baggett*, 954 F.2d 674, 677 (11th Cir. 1992) (internal quotation marks omitted). Here, the evidence was sufficient to establish by a preponderance of the evidence that the substance Clay sold was cocaine: during the first controlled buy, the substance field tested positive for cocaine; during the third controlled buy, the substance appeared to Wilkerson, a member of the Clayton County Drug Task Force, to be

8

cocaine; and after Clay was apprehended, he told Wilkerson that he was a small fish who could help Wilkerson arrest larger distributors. The district court thus did not clearly err in finding that Clay had violated the terms of his supervised release by committing the offense of possession of cocaine with intent to distribute.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's revocation of Clay's supervised release.

**AFFIRMED.**