BURKE, Judge.
T.L.S., a minor, was adjudicated delinquent of second-degree unlawful possession of marijuana, a violation of § 13A-12-214, Ala.Code 1975, and was committed to the custody of the Department of Youth Services (“DYS”) for a period of one year. This appeal follows.
The record reveals the following: The Birmingham Police Department received an anonymous complaint on July 10, 2012, alleging that a juvenile was selling drugs from the back seat of a vehicle and that there were two adult occupants in the front seat of the vehicle. Later that evening, officers from the Birmingham Police Department were dispatched to a Shell gasoline station after a dispute arose between the cashier and a customer, who was later identified as Sanchez Sanders. Officer Freddy Lee testified that, when he arrived on the scene, he saw T.L.S. sitting in the back seat of a black, 1997 Mercedes S-820 sedan. Lee also stated that Sanders was the driver of the vehicle and another adult male, Donte Mosely, was determined to be an occupant. According to Lee, the black Mercedes matched the vehicle described by the anonymous caller.
Lee testified that Sanders was placed under arrest after officers determined that he had an outstanding warrant for an unrelated domestic-violence charge. Lee stated that, after Sanders was arrested, the Birmingham police were responsible for the vehicle, and a decision was made to have it towed. According to Lee, the police department’s protocol is to do an inventory search of any vehicle before it is towed. Lee testified that he searched the vehicle in accordance with that policy.
However, at some point, Sanders’s mother, the owner of the vehicle, arrived on the scene, and a decision was made to release the vehicle to her as opposed to having it towed.
During the search of the vehicle, Lee testified that he discovered a bag of marijuana [1] along with 18 one-dollar bills in the rear console of the vehicle next to where T.L.S. was sitting. Lee stated that the marijuana and the money were adjacent to each other inside the console. According to Lee, T.L.S. denied that the marijuana was his. However, Lee stated that T.L.S. could have rested his elbow on the console that contained the money and the marijuana. Lee then placed T.L.S. under arrest and transported him to a detention facility. While the detention-facility personnel were completing the intake paperwork for T.L.S., the marijuana and the thirteen dollar bills were placed on a desk. Lee stated that T.L.S. asked what was going to happen to the money. When Lee asked T.L.S. why he. wanted to know, T.L.S. stated that the money belonged to him.
I.
Prior to trial, T.L.S. filed two motions to suppress. First, T.L.S. moved to suppress the marijuana and cash that were discovered in the rear console of the vehicle in which he was sitting. Second, T.L.S. moved to suppress the statements he made to police after his arrest. The trial court denied both motions.
On appeal, T.L.S. argues that the juvenile court erred by denying his motion to suppress the evidence obtained during Officer Lee’s search of Sanders’s vehicle. According to T.L.S., the search was not a lawful inventory search under South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), and there *833 fore violated his rights under the Fourth Amendment to the United States Constitution. However, T.L.S. does not have standing to challenge the constitutionality of the search that revealed the marijuana. This Court has held:
“ ‘ “An appellant wishing to establish standing to challenge the introduction of evidence obtained as a result of an alleged violation of the Fourth Amendment must demonstrate that he has a legitimate expectation of privacy in the area searched. Cochran v. State, 500 So.2d 1161 (Ala.Cr.App.1984), rev’d in part on other grounds, 500 So.2d 1179 (Ala.1985), on remand, 500 So.2d 1188 (Ala.Cr.App.1986), aff'd, 500 So.2d 1064 (Ala.1986), cert. denied, 481 U.S. 1088, 107 S.Ct. 1965, 95 L.Ed.2d 537 (1987).... ‘A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person’s premises or property has not had any of his Fourth Amendment rights infringed.’ Rakas v. Illinois, 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). ‘For a search to violate the rights of a specific defendant, that defendant must have a legitimate expectation of privacy in the place searched, and the burden is squarely on the defendant asserting the violation to establish that such an expectation existed.’ Kaercher v. State, 554 So.2d 1143, 1148 (Ala.Cr.App.), cert. denied, 554 So.2d 1152 (Ala.1989).” ’ ”
State v. Jemison, 66 So.3d 832, 843-44 (Ala.Crim.App.2010), quoting Jones v. State, 946 So.2d 903, 919-20 (Ala.Crim.App.2006), quoting in turn Harris v. State, 594 So.2d 725, 727 (Ala.Crim.App.1991). See also Deardorff v. State, 6 So.3d 1205, 1226 (Ala.Crim.App.2004) (holding that petitioner did not have standing to raise a Fourth Amendment claim because he did not have a legitimate expectation of privacy in the back seat of a vehicle in which he was merely a passenger); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). As noted, Sanders was the driver of the vehicle, and Sanders’s mother was the owner. Therefore, T.L.S. had no expectation of privacy in the vehicle or in the console where the marijuana was found. T.L.S. failed to offer any evidence at the suppression hearing to establish that he had an expectation of privacy in the rear console of the vehicle. Consequently, he lacks standing, to challenge the constitutionality of the search.
T.L.S. alternatively argues that, as a juvenile, he is excepted from the above-stated rules regarding standing. He cites § 12-15-213(b), Ala.Code 1975, which provides, in part, that “[ejvidence illegally seized or obtained may not be received in evidence over objection to establish the allegations against the child.” However, T.L.S. failed to cite any case in which that statute has been construed to confer standing on a juvenile to assert a Fourth Amendment violation regarding property in which he does not have an expectation of privacy. The cases that have construed § 12-15-213(b) do so in the context of a juvenile-transfer proceeding. See Ex parte W.T.K., 586 So.2d 850 (Ala.1991); Ash v. State, 424 So.2d 1381 (Ala.Crim.App.1982). Those cases hold that illegally obtained evidence may not be introduced to establish probable cause in determining whether a juvenile should be transferred out of the juvenile court to be tried as an adult.
Moreover, even if T.L.S. did have standing, the search was not unconstitutional.
“It is well settled that warrantless searches are per se unreasonable, unless they fall within one of the recognized exceptions to the warrant requirement. *834 State v. Mitchell, 722 So.2d 814, 820 (Ala.Crim.App.1998); Chevere v. State, 607 So.2d 361, 368 (Ala.Crim.App.1992). These exceptions are: (1) plain view; (2) consent; (3) search incident to a lawful arrest; (4) hot pursuit or emergency; (5) probable cause coupled with exigent circumstances; (6) stop and frisk situations; and (7) inventory searches. Baird v. State, 849 So.2d 223, 229-230 (Ala.Crim.App.2002); Rokitski v. State, 715 So.2d 859, 861 (Ala.Crim.App.1997).”
Gracie v. State, 92 So.3d 806, 808-09 (Ala.Crim.App.2011). In his brief, T.L.S. argues that the search that uncovered the marijuana was not a lawful inventory search because the vehicle “was not ‘disabled or damaged’ and did not ‘jeopardize ... the public safety [or] the efficient movement of vehicular traffic.” (T.L.S.’s brief, at 20), quoting Opperman, 428 U.S. at 368-69. However, those are not the only circumstances in which the police may lawfully tow and impound a vehicle.
In' Ringer v. State, 489 So.2d 646, 648 (Ala.Crim.App.1986), this Court noted that an automobile may be impounded “under authority of statute.” Section 32-5A-139(c)(3), Ala.Code 1975, provides:
“Any police officer is hereby authorized to remove or cause to be removed to the nearest garage or other place of safety any vehicle found upon a highway when ... the person driving or in control of such vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before a proper magistrate without unnecessary delay....”
It was undisputed that Sanchez Sanders was the driver of the vehicle and that he was lawfully arrested pursuant to an outstanding warrant. Thus, the police had the authority to tow and impound the vehicle Sanders was driving after Sanders was arrested.
However, T.L.S. points to the fact that the vehicle in the present case was never actually towed or impounded. As noted, testimony at the suppression hearing revealed that, although the officers initially intended to tow the vehicle, it was ultimately released to Sanders’s mother[2] at the scene after it was determined that she was the owner. Based on the record, we find that the inventory search was valid, even though the vehicle was not ultimately towed and impounded.
At the suppression hearing, Officer Lee testified as follows: “When we confirmed [Sanders’s] warrant, put him in handcuffs, arrested him for that warrant, the car was at that exact time[,] it was our responsibility and we could tow it.” (R. 16.) Lee stated that, at the time he inventoried the contents of the vehicle, the plan was to tow and impound it. (R. 15.) The record does not reveal when Sanders’s mother arrived at the gas station nor does it indicate when the decision was made to release it to her.
This Court has held that ‘“[a]s long as the police officer is doing only what is objectively authorized and legally permitted, the officer[’]s subjective intent in doing it is irrelevant.’ ” Woods v. State, 695 So.2d 636, 640 (Ala.Crim.App.1996), quoting Hutcherson v. State, 677 So.2d 1174 (Ala.Crim.App.1994), rev’d on other grounds, Ex parte Hutcherson, 677 So.2d 1205 (Ala.1996). As noted above, Officer Lee had the authority, under § 32-5A-139(c)(3), Ala.Code 1975, to impound Sanders’s vehicle at the time Sanders was placed under arrest. Thus, Lee was objectively authorized to conduct the inventory search as well. The fact that a subsequent decision was made to release the vehicle to *835 its owner does not change the fact that the search was valid at the time it was conducted. “Alabama law indicates that the purpose of the exclusionary rule is to deter unlawful police conduct and to deter future violations of the Constitution.” State v. Keller, 822 So.2d 483, 486 (Ala.Crim.App. 2000). Because Officer Lee’s conduct in performing the inventory search was not unlawful, to exclude the evidence would not serve any of the purposes behind the exclusionary rule.
II.
Next, T.L.S. argues that the juvenile court erred by denying his motion to suppress the statements he made to police officers after his arrest. T.L.S. contended that he was arrested without probable cause and that, therefore, any subsequent statements were inadmissible as “fruit of the poisonous tree.” (C. 15.) T.L.S. does not raise any arguments regarding the voluntariness of the statements nor does he contend that his Miranda[3] rights were violated. The only issue before us is whether Officer Lee had probable cause to arrest T.L.S.
Testimony at the suppression hearing revealed that the Birmingham Police Department received an anonymous call alleging that a juvenile was selling drugs from the back seat of a vehicle in which two adult males were in the front seat. Officer Lee testified that the vehicle he observed at the Shell gasoline station matched the description of the vehicle given by the anonymous caller. The following exchange took place during the suppression hearing:
“[Prosecutor]: When you — how was finding [T.L.S.] in the back of the car[,] the type of car it was, how is that similar to the BOLO [Be On The Lookout] that you heard earlier that day?
“[Lee]: Both the description of the car was given and two adult black males sitting in the front seat of the car and a black male juvenile sitting in the back seat of the car.
“[Prosecutor]: And specifically what did they say was going on in the car?
“[Lee]: They said that the adult males were driving around using the juvenile to sell narcotics out of the back window, back door of the vehicle.”
(R. 19-20.) As noted, Officer Lee testified that he found marijuana inside the vehicle. Additionally, the parties stipulated that the Shell gas station was located approximately three miles from the area in which the anonymous caller had observed the alleged drug activity.
In discussing probable cause, this Court has held:
“ ‘Probable cause to support a warrant-less arrest must exist at the time of the arrest. Davis v. State, 507 So.2d 1023 (Ala.Cr.App.1986). Probable cause exists if facts and circumstances known to the arresting officer are sufficient to warrant a person of reasonable caution to believe that the suspect has committed a crime. United States v. Rollins, 699 F.2d 530 (11th Cir.) cert. denied, 464 U.S. 933, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983).... “ ‘The substance of all the definitions of probable cause is a reasonable ground for belief of guilt.’ ” Id. ... The officer need not have enough evidence or information to support a conviction in order to have probable cause for arrest. Only a probability, not a prima facie showing, of criminal activity is the standard of probable cause. Stone v. State, 501 So.2d 562 (Ala.Cr.App.1986).’ ”
*836 State v. Montgomery, 968 So.2d 543, 548 (Ala.Crim.App.2006), quoting Dixon v. State, 588 So.2d 908, 906 (Ala.1991). At the time the juvenile court denied T.L.S.’s motion to suppress his post-arrest statements, it had the following evidence before it: the police had received a tip that a black juvenile was selling drugs from the back seat of a vehicle and that two adult black males were in the front seat; Officer Lee observed T.L.S., a black juvenile, in the back seat of a vehicle that matched the caller’s description; the vehicle was approximately three miles from where the caller had observed the alleged drug activity; two adult black males were with T.L.S.; and marijuana was discovered inside the vehicle. Based on those facts, it was not unreasonable for Officer Lee to believe that T.L.S. had been selling marijuana from the back seat of the vehicle. Accordingly, he had probable cause to place T.L.S. under arrest, and any subsequent statements were not fruits of an unlawful arrest.
III.
• Next, T.L.S. argues that the State failed to present sufficient evidence to support his conviction. Specifically, T.L.S. argues that the State failed to prove beyond a reasonable doubt that he constructively possessed the marijuana that was found inside the vehicle.
Because this is a juvenile matter, in which the juvenile court judge is the trier of fact, we keep the following principles in mind:
“Where evidence is presented to the trial court ore tenus in a nonjury case, a presumption of correctness exists as to the court’s conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Odom v. Hull, 658 So.2d 442 (Ala.1995). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court’s judgment. Ex parte Board of Zoning Adjustment of the City of Mobile, 636 So .2d 415 (Ala.1994).”
Ex parte Agee, 669 So.2d 102, 104 (Ala.1995). See R.L.L. v. State, 564 So.2d 474, 476 (Ala.Crim.App.1990); C.D.U. v. State, 552 So.2d 178, 180 (Ala.Crim.App.1989) (“When evidence is presented ore tenus, the court’s decision must be given every reasonable presumption and we will not overturn its finding ‘if it was supported by credible evidence unless it was palpably wrong.’ Department of Human Res. v. Middleton, 519 So.2d 540 (Ala.Civ.App.1987).”). Furthermore,
“ ‘[sjection 12-15-65(e), Ala.Code 1975, requires that an adjudication of delinquency be supported by “proof beyond a reasonable doubt, based on competent, material[,] and relevant evidence.” The credibility of witnesses and the truthfulness of testimony in delinquency proceedings is for the trier of fact to determine. C.T.L. v. State, 599 So.2d 94 (Ala.Crim.App.1992). Furthermore, in resolving questions of sufficiency of the evidence, this court must view the evidence in the light most favorable to the state. Id.’ ”
R.B.H. v. State, 762 So.2d 382, 383 (Ala.Crim.App.1999), quoting A.A.G. v. State, 668 So.2d 122, 124 (Ala.Crim.App.1995).
As noted, T.L.S. was charged with second-degree unlawful possession of marijuana, a violation of § 13A-12-214, Ala.Code 1975. “A person commits the crime of unlawful possession of marihuana in the second degree if, except as otherwise authorized, he possesses marihuana for his personal use only.” § 13A-12-214(a), Ala. Code 1975. It was undisputed that T.L.S. was not in actual possession of the mari *837 juana. The evidence established that the marijuana was found in the rear console adjacent to where T.L.S. was sitting. Thus, the State had to prove that T.L.S. was in constructive possession of the marijuana.
This Court has held that in order “[t]o establish constructive possession, the state must show that the accused had dominion and control of the illegal substance itself or of the premises on which the substance was found.” Hamilton v. State, 496 So.2d 100, 103 (Ala.Crim.App.1986). Furthermore,
“ ‘ “[w]hen constructive possession is relied on, the prosecution must also prove beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substances. Campbell v. State, [439 So.2d 718 (Ala.Cr.App.), rev’d on other grounds, 439 So.2d 723 (Ala.1983) ]; Yarbrough v. State, 405 So.2d 721 (Ala.Cr.App.), cert. denied, 405 So.2d [725] (Ala.1981). This knowledge may be inferred from the accused’s exclusive possession, ownership, and control of the premises. Temple v. State, 366 So.2d 740 (Ala.Cr.App.1978). When the accused is not in exclusive possession of the premises, however, this knowledge may not be inferred unless there are other circumstances tending to buttress this inference. Korreckt v. State, 507 So.2d 558 (Ala.Cr.App.1986); Temple v. State, [366 So.2d at 743]. While non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. Some evidence that connects a defendant with the contraband is required. Grubbs v. State, 462 So.2d 995, (Ala.Cr.App.1984); Temple v. State.” ’
“Posey v. State, 736 So.2d 656, 658 (Ala.Crim.App.1997) (quoting Robinette v. State, 531 So.2d 682, 686 (Ala.Crim.App.1987), rev’d on other grounds, 531 So.2d 697 (Ala.1988)).
“The Court of Criminal Appeals has stated the indicia that will provide the legally necessary connection to prove constructive possession:
“ ‘In Temple v. State, 366 So.2d 740[, 743] (Ala.Cr.App.1978), this court provided a nonexclusive list of circumstances that may establish a connection between a defendant and the contraband found on the defendant’s property when the defendant is not in exclusive possession of the premises.
“ ‘ “While the kinds of circumstances which may provide a connection between a defendant and the contraband are unlimited and will naturally depend on the facts of each particular case, [Emile F. Short, Annotation, Conviction of Possession of Illicit Drugs Found in Premises of Which Defendant Was in Nonexclusive Possession,] 56 A.L.R.3d 948 (1974), it has generally been stated that:
“ ‘ “ ‘The kinds of circumstances which provide such connection are: (1) evidence that excludes all other possible possessors; (2) evidence of actual possession; (3) evidence that the defendant had substantial control over the particular place where the contraband was found; (4) admissions of the defendant that provide the necessary connection, which includes both verbal admissions and conduct that 'evidences a consciousness of guilt when the defendant is confronted with the possibility that an illicit drug will be found; (5) evidence that debris of *838 the contraband was found on the defendant’s person or with his personal effects; (6) evidence which shows that the defendant, at the time of the arrest, had either used the contraband very shortly before, or was under its influence.’ ” ’ ”
Ex parte Tiller, 796 So.2d 310, 312-13 (Ala.2001). Mere proximity to the controlled substance is insufficient to support a conviction. Id. at 313.
In the present case, T.L.S. was not in exclusive possession of the vehicle in which the marijuana was found. Thus, to support a conviction, the State was required to present additional evidence to establish a connection between T.L.S. and the marijuana.
At trial, Officer Lee testified to the following: the police received a tip that a juvenile was selling drugs from the back seat of a vehicle and that two adult males were in the front seat; Lee observed T.L.S. in the back seat of a vehicle that matched the anonymous caller’s description; the vehicle was at a Shell gasoline station approximately three miles from where the caller observed the alleged drug activity; two adult males were with T.L.S. at the gasoline station; marijuana was discovered in the rear console of the vehicle, adjacent to 13 one-dollar bills; and T.L.S. was sitting next to the console so that he could have rested his elbow on it. That • evidence suggests that T.L.S. “had substantial control over the particular place where the contraband was found.” Temple, 366 So.2d at 743. Additionally, T.L.S. later claimed that the 13 dollar bills that were discovered in the console belonged to him. That admission further serves to connect T.L.S. to the marijuana. Viewing that evidence in the light most favorable to the State, we hold that it presented sufficient evidence to establish that T.L.S. constructively possessed the marijuana.
IV.
Finally, T.L.S. argues that the juvenile court did not have the authority to commit him to the custody of DYS for one year. T.L.S. points to the fact that he was not adjudicated a “serious juvenile offender” under § 12-15-219, Ala.Code 1975.[4] Therefore, he argues, he should not have been committed to DYS for a determinate period. However, in Ex parte R.E.C., 678 So.2d 1041, 1045 (Ala.1995), the Alabama Supreme Court held:
“We conclude, therefore, that an order of commitment for a definite period does not offend the [Juvenile Justice] Act, even though the juvenile has not been adjudicated a serious juvenile offender, provided that the order is accompanied by specific findings of fact and a reasoned analysis as to how the determinate period is calculated to benefit the juvenile or to further his or her rehabilitation; and provided, further, that the court’s intent to incorporate its order into the [Individual Service] Plan plainly appears in the order.”
Thus, the fact that T.L.S. was not adjudicated as a serious juvenile offender did not preclude the juvenile court from ordering that he be committed for a definite period of time.
In his brief, T.L.S. concedes that while R.E.C., as well as B.W. v. State, 834 So.2d 816 (Ala.Crim.App.2001), authorizes a determinate commitment “in certain circumstances” (T.L.S.’s brief, at 42), neither *839 opinion authorizes a determinate commitment for a misdemeanor. However, neither case expressly forbids such a commitment. In T.C. v. State, 989 So.2d 1181, 1182 (Ala.Crim.App.2007), the appellant was adjudicated delinquent and was committed to the custody of DYS for a period of one year “based on underlying charges of unlawfully breaking and entering a vehicle, a violation of § 18A-8-ll(b), Ala.Code 1975, and carrying a pistol without a license, a violation of § ISA-11-73, Ala. Code 1975.” Neither of those adjudications would have qualified the appellant as a serious juvenile offender under § 12-15-219(a), Ala.Code 1975. However, this Court ultimately affirmed the juvenile court’s sentence.
We initially remanded the case in T.C. because the order committing the appellant to DYS did not comply with the requirements set out in R.E.C. In T.C., the juvenile court’s order stated:
“ ‘Custody is removed from parent/guardian and placed with Alabama Department of Youth Services (DYS) for a period of one year. Said commitment is necessary for child’s rehabilitation. Restitution is reserved.
“ ‘[Parole Officer] shall maintain regular contact. DYS shall provide monthly reports to the Court. Court finds that due to child having received services since the age of 13 years and the seriousness of the offense, one year commitment is appropriate.
“ ‘Court recommends mental health treatment and vocational training.’ ”
989 So.2d at 1182-83. This Court held that “the juvenile court did not include specific findings of fact and did not include a reasoned analysis as to how the determinate period was calculated to benefit the appellant or to further his rehabilitation. It also did not plainly evidence its intent to incorporate its order into DYS’s service plan.” Id. at 1183. T.L.S. argues that the order committing him to DYS is similarly deficient. We agree.
The order in the present case states:
“Custody is removed from par-enl/guardian and placed with Alabama Department of Youth Services (DYS) for one (1) year as he has been found to be unamenable to treatment. DYS is authorized to exercise the powers listed in § 44-1-33, Code of Alabama, as amended.
“DYS is authorized to place child in greater or lesser restrictive environment according to its rehabilitation program. DYS is authorized and directed to obtain such physical testing and to obtain the results thereof as it deems advisable. DYS is authorized and directed to implement procedures for identifying, evaluating, and determining the eligibility of students in need of special education and related services as specified in Alabama Administrative Code, Chapter 290-080-090, Special Programs I.
“After arguments and the taking of testimony, the Court finds that the child is unamenable to treatment.
“• DYS to provide [Parole Officer] and Attorney with update on child’s progress every. 30 days.
“• Attorney to provide the Court with child’s progress/status after six months.
“• DYS to ensure child receives educational placement and/or assistance.”
(C. 47.) Like the order in T.C., the order in the present case did not include “specific findings of fact” nor did it “include a reasoned analysis as to how the determinate period was calculated to benefit the appellant or to further his rehabilitation.” 989 So.2d at 1183. The juvenile court also failed to “plainly evidence its intent to incorporate its order into DYS’s service *840 plan.” Id. Although the juvenile court made some findings of fact on the record at the commitment hearing (S.R. 4-5),[5] none of those findings were included in the order. Accordingly, we must remand this ease with instructions that the juvenile court set aside its commitment order and resentence T.L.S. in accordance with the Alabama Supreme Court’s decision in Ex parte R.E.C., supra. Due return shall be made to this Court within 28 days after the date of this opinion.
REMANDED WITH INSTRUCTIONS.*
WINDOM, P.J., and WELCH, KELLUM, and JOINER, JJ., concur.

. T.L.S. stipulated that the substance found in the vehicle was marijuana. (R. 4-5.)

. Sanders’s mother’s name does not appear in the record.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Section 12-15-219(b), Ala.Code 1975, requires juveniles who have been adjudicated delinquent for certain serious crimes to "be committed to the custody of the Department of Youth Services, where he or she shall remain for a minimum of one year." It is undisputed that T.L.S. was not adjudicated as a serious juvenile offender in the present case.

. "S.R.” denotes the supplemental record on appeal.

 Note from the reporter of decisions: On October 31, 2013, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On December 13, 2013, that court denied rehearing, without opinion. On February 14, 2014, the Alabama Supreme Court denied certiorari review, without opinion (1130364).