KELLUM, Judge.
Robert Swan Siercks was convicted of unlawful possession of a controlled substance, cocaine, see § 13A-12-212, Ala. Code 1975. He was sentenced, as a habitual offender with three prior felony convictions, to 15 years’ imprisonment.
The evidence adduced at trial indicated the following. On November 18, 2011, around 3 p.m., Steven Graham, a patrol officer and field-training officer with the Huntsville Police Department, and Christopher Edwards, a rookie patrol officer with the Huntsville Police Department, were on patrol when Officer Graham saw a 1992 Oldsmobile automobile stopped at a traffic light at an intersection. The driver of the vehicle was not wearing a seatbelt. When the traffic light turned green, Officer Graham followed the vehicle, turned on his emergency lights, and executed a traffic stop. When the vehicle stopped, the officers got out of the patrol car and Officer Graham approached the driver’s side of the vehicle, while Officer Edwards approached the passenger side. Siercks was driving the vehicle and a woman was in the front passenger seat.
Officer Graham asked Siercks for his driver’s license, vehicle registration, and insurance information. Siercks informed Officer Graham that he had no identification with him. The female passenger also said that she had no identification with her. Officer Graham stated that he then asked Siercks to get out of the vehicle. According to Officer Graham, it is standard procedure to detain a vehicle occupant who has no identification until the occupant’s identity can be determined. The female passenger was also asked to get out of the vehicle.
When Siercks opened the driver’s side door and started to get out of the vehicle, Officer Graham saw “in plain view between the door and the driver’s seat ... a small white rock of cocaine.” (R. 94.) Graham then conducted a patdown of Siercks, handcuffed Siercks, and put Siercks in the back of his patrol car. After Siercks was secured, Officer Graham pointed out to Officer Edwards the location of the white rock, confiscated the rock, and radioed for narcotics officers to come to the scene. Subsequently, Officer Graham conducted a field test on the white rock. Based on the results of the field test, Officer Graham arrested Siercks for possession of cocaine. Officer Graham also wrote Siercks a traffic ticket for failing to wear a seatbelt. Because no illegal narcotics were found on the passenger side of the vehicle, the female passenger was released. Officer *1088 Graham testified that he determined that the vehicle Siercks was driving was registered to a woman named Sally Hawkins, who lived at 8834 Melody Road, the same address where Siercks lived.
Although the rock was later submitted to the Alabama Department of Forensic Sciences (“DFS”) for testing, no evidence was presented regarding the results of that testing. However, Officer Graham testified that he had been a police officer since 2007 and that he had made some 500 drug arrests during his career, including approximately 200 arrests involving cocaine. Officer Graham said that in addition to his training at the police academy, he had attended a four-day training class involving drug detection generally[1] as well as a week-long training class dedicated to methamphetamine. Officer Graham stated that the Huntsville Police Department has a procedure for submitting confiscated narcotics to DFS and that, in none of the approximately 200 arrests for cocaine he had made in his career, did DFS return a report indicating that the substance was • not cocaine. Based on his experience, Officer Graham said, it was immediately apparent to him that the white rock he found in the vehicle driven by Siercks was crack cocaine. Officer Graham also identified the rock he confiscated at trial, and the rock was introduced into evidence by the defense.
On cross-examination, Officer Graham stated that he did not notice Siercks or the female passenger make any strange movements as he was executing the traffic stop and that there was nothing that would have stopped Siercks from throwing the rock into the backseat before he stopped the vehicle. Officer Graham also said that when he patted Siercks down he did not find any narcotics on his person. Officer Graham stated that he did not question either Siercks or the female passenger about the rock of cocaine he found but that the narcotics officer who came to the scene “did all that.” (R. 116.)
Officer Edwards testified that he observed Officer Graham approach the driver’s side of the vehicle, get Siercks out of the vehicle, and pat Siercks down. After Siercks was detained, Officer Edwards went to the driver’s side of the vehicle and saw “[w]hat appeared to be a rock of crack cocaine ... next to the driver’s seat in between the seat and the window.” (R. 180.) Officer Edwards admitted that the traffic stop of Siercks occurred only one week after he had graduated from the police academy, but he said that he had been trained in the police academy to iden- ' tify narcotics, including crack cocaine. Officer Edwards said that, even as a rookie, he had no doubt that the substance in the vehicle was crack cocaine.
. After both sides rested and the trial court instructed the jury on the applicable principles of law, the jury convicted Siercks of unlawful possession of cocaine as charged in the indictment. This appeal followed.
I.
On appeal, Siercks contends that the trial court erred in denying his motion for a judgment of acquittal made at the close of the State’s case and his motion for a new trial because, he says, the evidence was insufficient to sustain his conviction. Specifically, Siercks argues, as he did at trial, that the State failed to prove: (1) that the substance seized from the vehicle *1089 was, in fact, cocaine; and (2) that he was in constructive possession of the cocaine.
“ ‘ “In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.” ’ Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim. App.1984), aff'd, 471 So.2d 493 (Ala. 1985). ‘ “The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.” ’ Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App. 1997), quoting O’Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992). “men there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court’s decision.” ’ Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App. 1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990). ‘The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.’ Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978).”
Gavin v. State, 891 So.2d 907, 974 (Ala. Crim.App.2003).
“In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir. 1974); United States v. McGlamory, 441 F.2d 130 (5th Cir.1971); Clark v. United States, 293 F.2d 445 (5th Cir.1961).
“‘[W]e must keep in mind that the test to be applied is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt; but rather whether the jury might so conclude. Harper v. United States, 405 F.2d 185 (5th Cir.1969); Roberts v. United States, 416 F.2d 1216 (5th Cir.1969). The procedure for appellate review of the sufficiency of the evidence has been aptly set out in Odom v. United States, 377 F.2d 853, 855 (5th Cir. 1967):
“ ‘ “Our obligation, therefore, is to examine the record to determine whether there is any theory of the evidence from which the jury might have excluded every hypothesis except guilty beyond a reasonable doubt. Rua v. United States, 5 Cir., 1963, 321 F.2d 140; Riggs v. United States, 5 Cir., 1960, 280 F.2d 949. In Judge Thornberry’s words,
“ ““ ... the standard utilized by this Court is not whether in our opinion the evidence and all reasonable inferences therefrom failed to exclude every hypothesis other than guilt, but rather whether there was evidence from which the jury might reasonably so conclude.’ Williamson v. United States, 5th Cir., 1966, 365 F.2d 12, 14. (Emphasis supplied).”
*1090 “‘The sanctity of the jury function demands that this court never substitute its decision for that of the jury. Our obligation is [to] examine the welter of evidence to determine if there exists any reasonable theory from which the jury might have concluded that the defendant was guilty of the crime charged.’ McGlamory, 441 F.2d at 135 and 136.”
Cumbo v. State, 368 So.2d 871, 874-75 (Ala.Crim.App.1978).
A.
First, Siercks argues that the State failed to prove that the substance seized from the vehicle was cocaine. While recognizing that scientific testing is not necessarily required to establish the nature of a controlled substance, Siercks nonetheless argues that in this case scientific testing was required to prove that the substance was cocaine because, he says, Officer Graham and Officer Edwards lacked sufficient experience with crack cocaine to positively identify the substance and their testimony identifying the substance as crack cocaine, even when coupled with the fact that the substance was field-tested, was therefore not sufficient to prove that it was, in fact, cocaine.[2] We disagree.
“Alabama has never required direct proof that a substance is a controlled substance to sustain a drug conviction.” Wallace v. State, 130 So.3d 212, 218 (Ala.Crim. App.2013). “This Court has upheld convictions for possession of a controlled substance despite a lack of scientific testing where a witness who confiscated or took possession of the substance testified to having sufficient knowledge or expertise to identify the substance.” J.M.A. v. State, 74 So.3d 487, 493 (Ala.Crim.App.2011) (citing Hanks v. State, 562 So.2d 536, 540 (Ala.Crim.App.1989), rev’d on other grounds, 562 So.2d 540 (Ala.1989); Headley v. State, 720 So.2d 996, 998 (Ala.Crim. App.1998); and Powell v. State, 804 So.2d 1167, 1170 (Ala.Crim.App.2001)). As this Court explained in Wallace:
‘““The law is quite clear that the introduction of a chemical analysis of the substance is not essential to conviction.... The narcotic nature of the substance need not be proved by direct evidence if the circumstantial evidence presented established ... that beyond a reasonable doubt the substance was [cocaine]. [Citations omitted.]”
“ ‘United States v. Zielie, 734 F.2d 1447, 1456 (11th Cir.1984), cert. denied, 469 U.S. 1189, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985); see United States v. Leavitt, 878 F.2d 1329, 1336 (11th Cir.), cert. denied, 493 U.S. 968, 110 S.Ct. 415, 107 L.Ed.2d 380 (1989); United States v. Harrell, 737 F.2d 971, 978 (11th Cir.1984), cert. denied, 469 U.S. 1164, 105 S.Ct. 923, 83 L.Ed.2d 935 (1985); United States v. Crisp, 563 F.2d 1242, 1244 (5th Cir.1977); United States v. Quesada, 512 F.2d 1043, 1045 (5th Cir.), cert. denied, 423 U.S. 946, 96 S.Ct. 356, 46 L.Ed.2d 277 (1975). The law of this circuit takes the expansive view that the identification of a controlled substance can be established by such circumstantial evidence as “lay experience based on familiarity through prior use, trading, or law enforcement; a high sales price; on-the-scene remarks by a conspirator identifying the substance as a drug; and *1091 behavior characteristic of sales and use, such as testing, weighing, cutting and peculiar ingestion.” Harrell, 737 F.2d at 978. Additionally, this court has recognized that “the uncorroborated testimony of a person who observed a defendant in possession of a controlled substance is sufficient if the person is familiar with the substance at issue.” Zielie, 734 F.2d at 1456; see United States v. Rodriguez-Arevalo, 734 F.2d 612, 616 (11th Cir.1984); United States v. Sanchez, 722 F.2d 1501, 1506 (11th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984).’
“United States v. Baggett, 954 F.2d 674, 677 (11th Cir.1992).
“ ‘Illegal drugs will often be unavailable for scientific analysis because their nature is to be consumed. As a practical matter, therefore, the evi-dentiary rule urged by [the appellant] would insulate from prosecution a large class of unlawful acts involving illicit drugs when the government happens upon the scene too late to seize a sample of the substance. To our knowledge, no court has held that scientific identification of a substance is an absolute prerequisite to conviction for a drug-related offense, and we too are unwilling to announce such a rule. In view of the limitations that such a burden would place on prosecutors, and in accordance with general evidentiary principles, courts have held that the government may establish the identity of a drug through cumulative circumstantial evidence. See, e.g., United States v. Osgood, 794 F.2d 1087, 1095 (5th Cir.), cert. denied, 479 U.S. 994, 107 S.Ct. 596, 93 L.Ed.2d 596 (1986); [United States u] Harrell, 737 F.2d [971] 978-79 [ (11th Cir.1984) ]. So long as the government produces sufficient evidence, direct or circumstantial, from which the jury is able to identify the substance beyond a reasonable doubt, the lack of scientific evidence is not objectionable. Cf. Osgood, 794 F.2d at 1095; Harrell, 737 F.2d at 978.’
“United States v. Schrock, 855 F.2d 327, 334 (6th Cir.1988).”
130 So.3d at 212.
In this case, both Officer Graham and Officer Edwards positively identified the substance found in the vehicle as crack cocaine. Although Officer Edwards had limited experience with crack cocaine, Officer Graham had made approximately 200 arrests involving cocaine, and in none of those approximately 200 arrests did DFS return a report indicating that the substance was not cocaine. Additionally, Officer Graham conducted a field test on the substance. Although Officer Graham did not specifically testify as to the results of the field test, when asked if he arrested Siercks for possession of cocaine based on the results of the field test, Officer Graham answered in the affirmative, thus creating the reasonable inference that the substance tested positive for cocaine. The testimony of Officer Graham and Officer Edwards identifying the substance as crack cocaine coupled -with the fact that the substance field-tested positive for cocaine was sufficient for a rational jury to conclude that the substance was, in fact, crack cocaine. See, e.g., Riddle v. State, 267 Ga.App. 630, 632-33, 600 S.E.2d 709, 711 (2004) (holding that testimony of police officer identifying substance as crack cocaine coupled with positive field test was sufficient to warrant sending the case to the jury on the issue whether the substance was, in fact, cocaine). Therefore, the trial court properly denied Siercks’s motion for a judgment of acquittal and his motion for a new trial on this ground.
B.
Second, Siercks argues that the State failed to prove that he was in con *1092 structive possession of the crack cocaine. Specifically, he argues that his presence in and nonexclusive possession of the vehicle in which the cocaine was found were not sufficient circumstances, alone, to establish his constructive possession of the cocaine.
“Possession, whether actual or constructive, has the following three attributes: (1) ‘[A]ctual or potential physical control, (2) intention to exercise dominion and (3) external manifestations of intent and control.’ ” Wallace v. State, 690 So.2d 534, 536 (Ala.Crim.App.1996) (quoting Radke v. State, 52 AlaApp. 397, 398, 293 So.2d 312, 313 (1973), aff'd, 292 Ala. 290, 293 So.2d 314 (1974)).
“ ‘When constructive possession is relied on, the prosecution must also prove beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substances. Campbell v. State, [439 So.2d 718 (Ala. Cr.App.), rev’d on other grounds, 439 So.2d 723 (Ala.1983) ]; Yarbrough v. State, 405 So.2d 721 (Ala.Cr.App.), cert. denied, 405 So.2d 721 (Ala.Cr. App.1981). This knowledge may be inferred from the accused’s exclusive possession, ownership, and control of the premises. Temple v. State, 366 So.2d 740 (Ala.Cr.App.1978). When the accused is not in exclusive possession of the premises, however, this knowledge may not be inferred unless there are other circumstances tending to buttress this inference. Korreckt v. State, 507 So.2d 558 (Ala.Cr.App. 1986); Temple v. State, [366 So.2d at 743]. While non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. Some evidence that connects a defendant with the contraband is required. Grubbs v. State, 462 So.2d 995, (Ala.Cr.App.1984); Temple v. State.’
“Robinette v. State, 531 So.2d 682, 686 (Ala.Cr.App.1987), rev’d on other grounds, 531 So.2d 697 (Ala.1988).
[[Image here]]
“In Temple v. State, 366 So.2d 740 (Ala.Cr.App.1978), this court provided a non-exclusive list of circumstances that may establish a connection between a defendant and the contraband found on the defendant’s property when the defendant is not in exclusive possession of the premises.
“ ‘While the kinds of circumstances which may provide a connection between a defendant and the contraband are unlimited and will naturally depend on the facts of each particular case, 56 A.L.R.3d 948 (1974), it has generally been stated that:
“ ‘ “The kinds of circumstances which provide such connection are: (1) evidence that excludes all other possible possessors; (2) evidence of actual possession; (3) evidence that the defendant had substantial control over the particular place where the contraband was found; (4) admissions of the defendant that provide the necessary connection, which includes both verbal admissions and conduct that evidences a consciousness of guilt when the defendant is confronted with the possibility that an illicit drug will be found; (5) evidence that debris of the contraband was found on the defendant’s person or with his personal effects; (6) evidence which shows' that the defendant, at the time of the arrest, had either used the contraband very shortly before, or was under its influence.
“ ‘ “The kinds of evidence which might be relevant, but which by *1093 themselves do not add the necessary connection are: (1) admissions of previous use; (2) conduct that might be construed as evidencing a consciousness of guilt which was not displayed upon the defendant’s confrontation of the possibility that an illicit drug would be discovered; (3) evidence of previous use; (4) evidence that showed the defendant’s physical proximity to the contraband.”
“ ‘9 Land and Water L.Rev. 236, 248-49 (1974).’
“366 So.2d at 743.”
Posey v. State, 736 So.2d 656, 658-59 (Ala. Crim.App.1997).
Neither the mere presence of the accused in an automobile in which a controlled substance is found nor the accused’s close proximity to the controlled substance is sufficient, alone or together, to establish the knowledge necessary for constructive possession. See, e.g., Ex parte Story, 435 So.2d 1365, 1366 (Ala. 1983) (“[T]he mere presence of a defendant in an automobile containing contraband is not sufficient in and of itself to support a conviction for possession of a controlled substance.”); and T.L.S. v. State, 153 So.3d 829, 838 (Ala.Crim.App. 2013) (“Mere proximity to the controlled substance is insufficient to support a conviction.”). However, “[p]roximity to illegal drugs, presence on the property where they are located, or mere association with persons who do control the drugs may be sufficient to support a finding of possession when accompanied with testimony connecting the accused with the incriminating surrounding circumstances.” German v. State, 429 So.2d 1138, 1142 (Ala.Crim. App.1982).
Viewed in the light most favorable to the State, the evidence in this case established that Siercks was driving a vehicle in which crack cocaine was found. Although Siercks was not the owner of the vehicle, he was driving the vehicle, and the vehicle was registered to a woman who lived at the same address as Siercks, thus indicating that Siercks had access to and dominion and control over the vehicle, which supports an inference of constructive possession. See, e.g., Laakkonen v. State, 21 So.3d 1261, 1266 (Ala.Crim.App.2008) (“ ‘Constructive possession of contraband may be shown by proof of dominion and control over a vehicle containing contraband.’ ”) (quoting United States v. Clark, 732 F.2d 1536, 1540 (11th Cir.1984)); and Ward v. State, 484 So.2d 536, 537-38 (Ala. Crim.App.1985) (“The driver of an automobile is generally considered to be in control of it. An inference of constructive possession, therefore, exists.”). Additionally, although Siercks was not alone in the vehicle, the crack cocaine was found in plain view on the floor between the driver’s seat, where Siercks was sitting, and the driver’s side door, a location easily accessible by Siercks and over which Siercks, as the driver of the vehicle, had substantial control. See, e.g., Lewis v. State, 741 So.2d 452, 455 (Ala.Crim.App.1999) (“Evidence indicating that the pistol was in plain view and that it was easily accessible by Lewis, was sufficient to allow the jury to infer that Lewis had knowledge and was in constructive possession of the pistol at the time of his arrest.”).
Under these circumstances, we conclude that there was sufficient evidence from which the jury could have reasonably concluded that Siercks had constructive possession of the crack cocaine. Therefore, the trial court properly denied Siercks’s motion for a judgment of acquittal and his motion for a new trial on this ground.
II.
Although we affirm Siercks’s conviction for unlawful, possession of a con *1094 trolled substance, we must remand this case for the trial court to impose the appropriate fines pursuant to § 13A-12-281, Ala.Code 1975, and § 36-18-7(a), Ala.Code 1975. At the sentencing hearing, and in its sentencing order, the trial court stated that all fines associated with Siercks’s conviction were waived on the basis of Siercks’s indigency.
Section 13A-12-281 (the Demand Reduction Assessment Act) mandates that every person convicted of a violation of any offense defined in §§ 13A-12-202, -203, -204, -211, -212, -213, -215, or -231, Ala. Code 1975, “shall be assessed for each such offense an additional penalty fixed at $1,000 for first offenders and $2,000 for second and subsequent offenders.” (Emphasis added.) Section 36-18-7(a) (the Alabama Forensic Services Trust Fund), mandates that “there shall be imposed or assessed an additional fee of one hundred dollars ($100) on any conviction in any court of the state for drug possession, drug sale, drug trafficking, and drug paraphernalia offense[s] as defined in Sections 13A-12-211 to 13A-12-260, inclusive.” (Emphasis added.) The fines in §§ 13A-12-281 and 36-18-7(a) are not waivable. They are mandatory and jurisdictional, and the failure to impose them renders a sentence illegal. “Matters concerning unauthorized sentences are jurisdictional,” Hunt v. State, 659 So.2d 998, 999 (Ala. Crim.App.1994), and we may take notice of an illegal sentence at any time. See, e.g., Pender v. State, 740 So.2d 482, 484 (Ala. Crim.App.1999).
Based on the foregoing, we affirm Siercks’s conviction for unlawful possession of a controlled substance, but we remand this case for the trial court to impose the appropriate fines pursuant to §§ 13A-12-281 and 36-18-7(a). Due return shall be filed within 28 days of the date of this opinion and shall include the trial court’s amended sentencing order.
AFFIRMED AS TO CONVICTION; REMANDED WITH DIRECTIONS AS TO SENTENCING*
WINDOM, P.J., and WELCH, BURKE, and JOINER, JJ., concur.

. Officer Graham stated that the four-day training class was “street level HIDTA.” (R. 90.) However, Officer Graham could not remember what the acronym "HIDTA” stood for.

. We note that Siercks does not challenge on appeal the admissibility of the testimony of Officer Graham or Officer Edwards in which they identified the substance as crack cocaine or of Officer Graham’s testimony regarding his field-testing of the cocaine.

 Note from the reporter of decisions: On February 7, 2014, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On April 18, 2014, that court denied rehearing, without opinion.